220 P.3d 449 (2009)
232 Or. App. 13
In the Matter of N.E.C., a Minor Child.
STATE of Oregon, Petitioner Below, and
E.A.C.S., Respondent,
v.
A.L.M., aka A.M., Appellant.
05301J02, A141708.
Court of Appeals of Oregon.
Argued and Submitted On September 17, 2009.
Decided November 18, 2009.
*450 Michael Vergamini, Eugene, argued the cause and filed the brief for appellant.
Mary Shannon Storey, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.
Margaret McWilliams argued the cause and filed the brief for minor child.
Before EDMONDS, Presiding Judge, and WOLLHEIM, Judge, and SERCOMBE, Judge.
EDMONDS, P.J.
In this juvenile dependency proceeding, mother appeals a judgment vacating the commitment of her child, N, to the Department of Human Services but continuing the child as a ward of the court. The order implicitly provides for the continuing jurisdiction of the juvenile court over N based on the allegations contained in the amended petition. The allegations are that "[t]he circumstances and conditions of [N] are such as to endanger her own welfare" because (1) she had been subjected to the threat of harm of neglect because mother left her with inappropriate caregivers; (2) father was unable to protect N because he did not have a custody judgment; and (3) father's substance abuse, if untreated, presented a threat to N. Mother asserts, in part, that "the reasons for wardship over this child no longer exist" and, therefore, the juvenile court erred in "retaining wardship over the child[.]" On de novo review, ORS 419A.200(6)(b),[1] we agree with mother and, accordingly, reverse and remand the case to the juvenile court with instructions to terminate the wardship over N.
At the permanency hearing, mother notified the juvenile court that she contested its continued jurisdiction over N. She asserted that "if jurisdiction is establishe[d] under [ORS] 419B.100, and those reasons continue to exist, then wardship can be continued. But here, those reasons no longer continue to exist * * *." Nevertheless, the court ruled that jurisdiction would continue, that father was awarded physical custody of N, and that any visitation by mother with N would be determined by father.
Pursuant to ORS 419B.100(1)(c), the juvenile court has jurisdiction over a child "[w]hose condition or circumstances are such as to endanger the welfare of the [child] * * *." "The key inquiry in determining whether `conditions or circumstances' warrant jurisdiction is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." State ex rel. Juv. Dept. v. Vanbuskirk, 202 Or.App. 401, 405, 122 P.3d 116 (2005). It is axiomatic that a juvenile court may not continue a wardship "if the jurisdictional facts on which it is based have ceased to *451 exist." State ex rel. Juv. Dept. v. Gates, 96 Or.App. 365, 372, 774 P.2d 484, rev. den., 308 Or. 315, 779 P.2d 618 (1989) (decided under former ORS 419.476(1)(c), repealed by Or. Laws 1993, ch. 33, § 373, which was materially indistinguishable from ORS 419B.100(1)(c)).
Based on all the evidence and argument presented in this case, the only allegation of the amended petition that appears to still be present is father's lack of a custody order with respect to N. However, without some evidence that mother is a present danger to N's welfare, the lack of a custody order alone is not sufficient for jurisdiction pursuant to ORS 419B.100.
The dissent interprets the record differently in its de novo review. According to the dissent, "mother did not argue to the juvenile court that her conditions had changed or that the court was obligated to make findings about her current relationship with N[,]" and the "evidence is sufficient, in the circumstances of this case, to support the conclusion that N still needs the protection from mother that would be allowed by continuing the wardship." 232 Or.App. at 18, 220 P.3d at 452 (Sercombe, J., dissenting).
To the extent that the dissent contends that, pursuant to ORAP 5.45, mother failed to properly preserve the issue that we address herein, it concedes that mother objected in writing "to the need to continue wardship because N was no longer in physical custody of DHS." 232 Or.App. at 21-22, 220 P.3d at 453-54 (Sercombe, J., dissenting). It also concedes that mother made that objection orally, at the hearing. Id. On those procedural facts, we have no difficulty in concluding that the issue of whether wardship of N should be continued after DHS was relieved of legal custody was squarely before the juvenile court. Furthermore, as set forth above, mother also specifically raised before the juvenile court her assertion that "the reasons [to continue the wardship] no longer continue to exist[.]" Under the circumstances, the issue of whether the juvenile court could continue the wardship was properly preserved for purposes of appeal under ORAP 5.45.
As to the sufficiency of the evidence issue regarding whether wardship should continue, the dissent relies on the following evidence:
"The juvenile court earlier found that grounds for jurisdiction over N existed because mother was neglectful of N, father's alcohol use endangered N's welfare, and father was unable to protect N from mother because he lacked custody of N. The caseworker reported that mother continued to be assessed to be an unfit parent inasmuch as her oldest child had been made a ward of the court three months previously, and her youngest child was taken into custody at birth six months earlier. Mother was in the midst of termination of parental rights proceedings for two other children at the time of N's review hearing. Mother was not operating under a case plan for reunification with N and had very little personal interaction with N. Mother presented no evidence and made no contention to the court that the dependency jurisdiction facts about her had changed. The caseworker reported in her affidavit that `[father] does not have a legal custody judgment.'"
232 Or.App. at 27-28, 220 P.3d at 456-57 (Sercombe, J., dissenting).
What is noticeably lacking from the above recitation is any evidence that, at the time of the review hearing, N's welfare was endangered by his present circumstances or that there was a reasonable likelihood that mother's existing circumstances presented a threat of harm to his welfare. See Vanbuskirk, 202 Or.App. at 405, 122 P.3d 116. Jurisdiction over N was originally assumed by the court because mother left the child with inappropriate caregivers and because of father's alcoholism and lack of a custody order. Father's alcohol issues have been rectified so that they no longer endanger N's welfare. Father now has physical custody of N, and mother's act of leaving the child with inappropriate caregivers in the past was not a circumstance that authorized continuing jurisdiction over N in the absence of a continued reasonable likelihood of harm to the *452 child.[2] The juvenile court heard no additional evidence that mother continued to represent a threat to N's welfare in light of father's changed circumstances. The facts that mother is involved in other termination proceedings, that she has no case plan for reunification with N, and that she has had little contact with N do not ipso facto demonstrate that she represented a threat to N's welfare at the time of the review hearing. Accordingly, in the absence of any evidence in this case that conditions and circumstances existed at the time of the review that presented a reasonable likelihood of harm to the child, the juvenile court erred in continuing the wardship over N.[3]
Reversed and remanded with instructions to terminate the wardship.
SERCOMBE, J., dissenting.
The majority concludes that N's wardship should be terminated because the state failed to present evidence in the review hearing that the factual reasons for dependency jurisdiction persisted. In particular, the majority faults the state for failing to show that "mother is a present danger to N's welfare." 232 Or.App. at 16, 220 P.3d at 451. But mother did not argue to the juvenile court that her conditions had changed or that the court was obliged to make findings about her current relationship with N. Mother had been found to be neglectful of N earlier by the juvenile court. Two of mother's other children had been made wards of the court in the six months before N's review hearing. Mother's parental rights to two other children were in the process of being terminated at the time of that hearing. The caseworker stated in an affidavit that "[father] does not have a legal custody judgment. If the Court retains wardship, [father] could ensure the protection of the child until [father] obtains legal custody." That evidence is sufficient, in the circumstances of this case, to support the conclusion that N still needs the protection from mother that would be allowed by continuing the wardship. Thus, I dissent from the majority's termination of that wardship.
Mother appeals a judgment entered after a combined disposition review and permanency hearing. The proceedings arose after an amended petition was filed on May 16, 2007, and the court entered an order or judgment finding that it had jurisdiction over N, the child of mother and father, because "conditions or circumstances are such as to endanger [N's] welfare." ORS 419B.100(1)(c). The record suggests that the court made that jurisdictional determination after a hearing and after it made findings that mother had left N and her other children with inappropriate caregivers and without making adequate plans for their care and safety, father had problems with alcohol, and father was unable to protect N because he lacked custody over her. See ORS 419B.305 and ORS 419B.310 (providing for hearing on dependency petition).
The juvenile court made N a ward of the court under ORS 419B.328(1). That statute requires the juvenile court to "make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court." N was placed in the legal custody of the Department of Human Services (DHS) pursuant to ORS 419B.337(1) (allowing placement of a ward "in the legal custody of [DHS] for care, placement and supervision" when the "court determines it would be in the best interest and for the welfare of a ward"). Under ORS 419B.337(6), commitment of the physical custody of a ward to DHS "continues until dismissed by the court or until the ward becomes 21 years of age." ORS 419B.337(7) permits the ending of physical custody of a child with DHS in some *453 circumstances "because the ward has been safely reunited with a parent."
After N was made a ward of the court, father participated in counseling sessions with her, was involved in her medical care and education, completed home parent training, and abstained from alcohol use. N was placed in her father's care by DHS on May 23, 2008. While under her father's care, N continued to see mother during supervised weekend visitations.
The reunification of N with father was successful. On January 16, 2009, DHS moved to vacate the commitment of N with the agency. The motion provided:
"DHS requests that the Court vacate commitment of the child to DHS because [N] has been living with her father * * * since May 23, 2008, and is doing well in that placement. Continued Court supervision and wardship is necessary because [father] does not have a legal custody judgment and needs continued wardship to protect the child. DHS requests that the child remain a ward of the Court, with placement to continue with her father * * * until legal custody is granted to [father]."
On January 20, 2009, DHS reported to the court under ORS 419B.440(2)(c). ORS 419B.440 requires reports to the juvenile court by persons with physical custody of a ward. One of the circumstances requiring a report is "[w]hen the ward is in the legal custody of [DHS] as provided in ORS 419B.337, but the ward has been placed for a period of six consecutive months in the physical custody of a parent * * *." ORS 419B.440(2)(c).
The report generally complied with ORS 419B.443, which sets out the required contents of a report to the juvenile court by a person with physical custody of a ward. The report referenced two prior reports "for background information on this family." It discussed the reasons for dependency jurisdiction over N, father's efforts toward reunification, the success of placement of N with father, and N's counseling and educational progress. The report contained very favorable evaluations of father by a social worker retained by DHS. DHS reported, with respect to mother, that
"[mother] is a twenty four year old mother of five children, all of whom are out of her care. Her oldest child, [A], came into care in October of 2008; [M] and [B] have been in care since April 2007 and are currently on the termination of parental rights track; [N] is in the home of her father and her youngest, [V], was made a ward of the Court at her birth in July of 2008 and was placed in foster care in August of 2008. [Mother] visits with [N] at a DHS office for one hour a week."
The report recommended a permanency judgment based on the following plan:
"[Father] has shown a continued dedication to [N] and has shown he can meet all of her physical, mental and emotional needs at more than a minimally adequate level. He continues to make choices with [N's] best interests in mind. [N] is a happy four year old who is not in need of any services from DHS. [Father] does not yet have a custody order so it is the agency's plan to have the Court vacate the commitment to DHS but keep the court case open until [father] obtains a custody order."
An affidavit of the DHS caseworker, submitted with the motion for change of commitment, attested to the need for continued wardship. After reviewing the factual history of the case and father's efforts toward and in support of reunification with N, the assigned caseworker declared that "[father] does not have a legal custody judgment. If the Court retains wardship, [father] could ensure the protection of the child until [father] obtains legal custody."
The court held a disposition review and permanency hearing on January 20, 2009. Before the hearing, mother objected to the motion as "overbroad and containing provisions that fall outside the jurisdiction of the Juvenile Court or the Department of Human Services." Mother did not object to the change of physical custody to father. She did object to the need to continue wardship because N was no longer in physical custody of DHS. Mother explained in her written objection:

*454 "Since DHS is asking for jurisdiction to be vacated, DHS has clearly made the determination that there are no services to be provided to Mother in reference to this child. DHS has not moved to terminate Mother's parental rights and by filing a motion to vacate its jurisdiction, has made clear to this Court that it has no basis to do so. Without moving to terminate and without providing any other service to Mother, there are no grounds in the juvenile code for the juvenile court to retain jurisdiction over this child.
"* * * * *
"* * * If DHS vacates jurisdiction over the child, a juvenile court cannot have jurisdiction over the parents.
"* * * Moreover, having the child remain an indefinite ward of the court until Father is able to file a petition for custody, as the State is moving this Court to order, would unlawfully foreclose Mother from responding to a petition for custody and parenting time in a domestic relations case."
That particular objection, and no other, was renewed orally by mother at the hearing. Mother did not move to terminate the wardship. Mother presented no evidence. The only evidence before the juvenile court was the caseworker report and attachments and the caseworker affidavit.
The court denied mother's objection that ending DHS's physical custody over N removed any grounds for continued wardship and that the wardship would become indefinite. The court entered a "judgment on permanency hearing and judgment of disposition review" on February 27, 2009. The judgment found that DHS "has made reasonable efforts to place this child in a timely manner in accordance with the plan and to complete the steps necessary to finalize the permanent plan of reunification with the parent." The judgment then provided:
"IT IS FURTHER ORDERED that the commitment of the child to [DHS] is vacated, and the child continues as a ward to the court, placed in the physical custody of her father * * * for such period of time until further order of the court.
"IT IS FURTHER ORDERED that this matter is to be set for review in 6 months.
"IT IS FURTHER ORDERED that contact between the child and mother shall be determined by the father."
Mother appealed and asserted three assignments of error. The second assignment of error (denial of mother's procedural due process rights) and third assignment of error (denial of mother's substantive due process rights) are without merit and require no comment. The first assignment of error is that the "juvenile court err[ed] in conferring authority on Father to determine parenting time while retaining wardship over the child until such time as Father files a private petition for custody and parenting time." Mother argued in her brief that the effect of the permanency judgment was to improperly interfere with her ability to seek parenting time through a motion with the domestic relations court, that "[f]ather is free to disallow all contact between [m]other and child without the court ever having made a finding concerning [m]other's fitness to parent this child," that the failure to restrict mother's visitation in the judgment "strongly militates against the presumption that the jurisdictional facts upon which the court originally retained wardship continue to exist," and that the continued wardship was a "transparently improper use of the wardship statute to decide custody and parenting times between the parents." Mother asserted that wardship cannot continue "if the jurisdictional facts on which it is based have ceased to exist" and that those facts were shown not to exist because N was in physical custody of father and not DHS, and DHS implicitly represented that there are no services to be provided to mother and no grounds for termination of her rights by "filing the motion to terminate its jurisdiction."
Father responds that mother did not seek affirmative relief (termination of wardship) before the juvenile court and cannot obtain that relief on appeal. Father contends that at least one of the bases for wardship continuesthat father is unable to protect the child because he lacks legal custody of her. Father points to ORS 419B.337(7) and ORS 419B.331 as setting out the specific statutory *455 authority for the court's actions. N argues as well that mother "confuses the concepts of juvenile court wardship and jurisdiction with the administrative authority of DHS to make decisions in loco parentis for a child committed to the legal custody of the agency," that the reasons for wardship did not end when DHS transferred custody of her to father, and that, because "two of the jurisdictional bases from the dependency petitions were still unresolved at the time of the permanency hearing, it was not erroneous for the juvenile court to decline to terminate the juvenile court jurisdiction over [N]."
The majority does not address the arguments made by Father or N. Instead, the majority terminates the wardship over N, reasoning:
"Based on all the evidence and argument presented in this case, the only allegation of the amended petition that appears to still be present is father's lack of a custody order with respect to N. However, without some evidence that mother is a present danger to N's welfare, the lack of a custody order alone is not sufficient for jurisdiction pursuant to ORS 419B.100."
232 Or.App. at 16, 220 P.3d at 451.
I agree with the majority that the juvenile court, under the circumstances of this case, was obliged to evaluate whether jurisdiction over N should continue. But I disagree that the record does not support continuation of jurisdiction over N and that the state had the burden of going forward with evidence to support all of the allegations in the dependency petition.
The majority relies on State ex rel. Juv. Dept. v. Gates, 96 Or.App. 365, 372, 774 P.2d 484, rev. den., 308 Or. 315, 779 P.2d 618 (1989), for the proposition that wardship should not be continued "`if the jurisdictional facts on which it is based have ceased to exist.'" 232 Or.App. at 16, 220 P.3d at 454. In that case, the mother and the father had two children, S and T, who were made wards of the court after the Crook County Circuit Court took jurisdiction because of sexual abuse by the father and the mother's failure to protect the children. Custody of the children was placed with the mother, and the father was forbidden to have any contact with the children. The mother and the father took S and T to Multnomah County where authorities found them two years later. By that time, the mother and the father had two more children, Sa and J. All of the children were then placed in foster care. The mother filed a petition for a review hearing over the placement of S and T, and the state filed a petition to establish jurisdiction over Sa and J. The juvenile court held a hearing and ordered the return of physical custody of the children to the parents. Gates, 96 Or.App. at 368-69, 774 P.2d 484.
On appeal, we held that it was not necessary to redetermine jurisdiction over S and T:
"The factual basis for that determination was proved in the Crook County proceeding in 1984, and it was error for the trial court and the parties to treat the case as if the allegations of the Crook County petitions * * * had to be proved in Multnomah County. An order making a child a ward of the court is a final, appealable order. * * *
"* * * Thus, the findings on which jurisdiction was established over [S] and [T] were conclusive and could not be challenged in the Multnomah County proceeding. The trial judge's findings here are a nullity insofar as they purport to relate to the allegations of the original petition and insofar as they are contrary to the 1984 orders.
"The effect of mother's October, 1986, petition [for a review hearing] was to place in issue whether the conditions and circumstances of [S] and [T] required them to remain in the court's jurisdiction. A wardship cannot continue if the jurisdictional facts on which it is based have ceased to exist. * * * However, that determination does not include a retrial of the original allegations. The evidence is limited to whether the conditions that were originally found to endanger a child persist. * * *"
Id. at 371-72, 774 P.2d 484.
The duty to determine whether conditions found to endanger a child persist in Gates was based on the mother's petition for a review hearing. Here, of course, mother did *456 not seek a review hearing or petition for dismissal of the wardship.[1] ORS 419B.337(7) allows the court to dismiss commitment of the ward to DHS "because the ward has been safely reunited with a parent." That statute says nothing about any reassessment of dependency jurisdiction. The required findings after a permanency hearing likewise do not require the court to reassess the facts for dependency jurisdiction. ORS 419B.476.
Mother did not direct the juvenile court's attention to any statutory authority supporting her contention that the court was obliged to review its jurisdiction over N. Instead, mother argued below and on appeal that the court was obliged to dismiss jurisdiction over N because DHS had given up physical custody over the child. That contention is wrong. Physical custody and wardship are two separate issues. Whether a ward continues in that status and remains within the jurisdiction of the court does not depend on whether physical custody of the ward is with DHS, the parents, or a guardian. ORS 419B.328(2) provides:
"The court's wardship continues, and the ward is subject to the court's jurisdiction, until one of the following occurs:
"(a) The court dismisses the petition concerning the ward;
"(b) The court transfers jurisdiction over the ward as provided in ORS 419B.127, 419B.130 and 419B.132;
"(c) The court enters an order terminating the wardship;
"(d) A judgment of adoption of the ward is entered by a court of competent jurisdiction; or
"(e) The ward becomes 21 years of age."
By contrast, physical custody of a ward of the court can be with DHS, the parents, or others. ORS 419B.331 authorizes the juvenile court to place a ward under "protective supervision" if "it would be in the best interest and welfare of a ward." Protective supervision placement can be "in the legal custody of the ward's parents or other person with whom the ward is living" or "some relative or some person maintaining a foster home approved by the court" or "in a child care center or a youth care center authorized to accept the ward." Id.
We recently explained that taking jurisdiction over a child and continuing physical custody with the parents are not inconsistent actions. In State v. S.M. P., 230 Or.App. 750, 217 P.3d 260 (2009), we reversed termination of a wardship where the termination was based solely on placement of the ward with her mother. We held:
"ORS 419B.331 allows the court, after taking dependency jurisdiction over a child, to place the child with the parent, subject to DHS supervision. The placement that serves a child's best interest is a separate question from whether the court should exercise jurisdiction over the child. See State ex rel. Juv. Dept. v. Brammer, 133 Or.App. 544, 549 n. 5, 892 P.2d 720 (1995) (taking jurisdiction over the child merely places the child under the protection of the court, and whether the child remains in the home is determined in another proceeding); ORS 419B.100(2)."
230 Or.App. at 755, 371 P.2d 669.
Thus, the change of physical custody is immaterial to the issue of the continued jurisdiction of the court. Here, mother further asserted that continuation of wardship would be unfair to her in future domestic relations proceedings. That contention has nothing to do with whether conditions for dependency jurisdiction persist. Mother's contentions were insufficient to raise any question that her own conditions had changed since dependency jurisdiction was established.
Nonetheless, the applicable statutes required the juvenile court to determine whether the wardship should continue at the review hearing. ORS 419B.449(1) provides that a court shall "hold a hearing to review the child or ward's condition and circumstances and to determine if the court should continue jurisdiction and wardship or order modifications in the care, placement and supervision *457 of the child or ward," in certain circumstances, including when the court has received a report that the child has been in custody of DHS but has been placed for six consecutive months in the physical custody of a parent under ORS 419B.440(2)(c). ORS 419B.449(1)(d).[2] The court received that report in this case. Although mother did not preserve that argument in the juvenile court proceeding, ORS 419B.449(1)(d) provides some basis for concluding that the juvenile court was obliged to assess whether jurisdiction over N should continue.
Where I part company with the majority, however, is with its conclusion that the hearing record was insufficient to show that wardship should continue. See 232 Or. App. at 15-16, 17, 220 P.3d at 450-51, 451. The juvenile court earlier found that grounds for jurisdiction over N existed because mother had neglected N's needs, father's alcohol use endangered N's welfare, and father was unable to protect N from mother because he lacked custody of N. The caseworker reported that mother continued to be assessed to be an unfit parent inasmuch as her oldest child had been made a ward of the court three months previously, and her youngest child was taken into custody at birth six months earlier. Mother was in the midst of termination of parental rights proceedings for two other children at the time of N's review hearing. Mother was not operating under a case plan for reunification with N and had very little personal interaction with N. Mother presented no evidence and made no contention to the court that the dependency jurisdiction facts about her had changed. The caseworker reported in her affidavit that "[father] does not have a legal custody judgment. If the Court retains wardship, [father] could ensure the protection of the child until [father] obtains legal custody." Those unrebutted facts show that N needed continued protection of the court from mother and that continuation of the wardship was proper.
There may be cases where a greater evidentiary showing on the need for continued jurisdiction over a ward is required from the state. This casewhere no assertion of any change in jurisdictional facts about mother is made by her, mother continues to lose custody of her other children to the state, and the state makes an unrebutted factual averment that N needs "continued protection"is not one of them. The majority ends this necessary protection largely on mother's improper assertion that the ending of the physical custody of N by DHS has some factual or legal significance to the wardship. That immaterial claim should not prompt the extraordinary relief ordered by the majority.
I respectfully dissent.
NOTES
[1] ORS 419A.200 was amended by Oregon Laws 2009, chapter 231, section 6. Because the notice of appeal in this case was filed before the effective date of those amendments, they are inapplicable in this case.
[2] The record does not demonstrate that, if the wardship is dissolved, mother would use her legal custody of N to remove the child from father's physical custody and place the child with inappropriate caregivers.
[3] If father perceives a need for court-ordered custody and an order restraining mother from having contact with N, the circuit courts provide a forum to make such a request, and such a procedure will provide both parties an opportunity to be heard on those issues based on their circumstances that exist at the time of such a request. If father had initiated a domestic relations proceeding and N's legal or physical custody was simultaneously at issue in a dependency proceeding, the actions could be consolidated pursuant to ORS 419B.806(2).
[1] Mother is free to seek a review hearing anytime that a report is made to the court by DHS. ORS 419B.449(1)(b). Mother, as a parent whose rights have not been terminated, could also seek and obtain a permanency hearing to determine whether the wardship should end or the custody or visitation arrangements should be changed. ORS 419B.470(5).
[2] Even in those circumstances, however, the juvenile court is not required to make findings on "[t]he expected timetable for * * * termination of the wardship" unless "the decision is to continue the ward in the legal custody" of DHS. ORS 419B.449(4)(b).