Argued and submitted March 11, appeal dismissed as moot June 18, 2014

In the Matter of T. A.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

B. A.
and B. O.,
*Appellants.*

Jackson County Circuit Court
13JU00498; A155213

330 P3d 47

Shannon Storey, Senior Deputy Public Defender, argued the cause for appellant B. A. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Megan L. Jacquot argued the cause and filed the brief for appellant B. O.

Matthew J. Lysne, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Mother and father separately appeal from a judgment of the juvenile court taking jurisdiction over their two-year-old daughter, T, under ORS 419B.100(1)(c),[1] based on allegations that (1) mother has unresolved substance abuse that presents a danger to the child; and (2) father lacks an order granting him sole legal custody of T and is therefore unable to protect T from mother.

Parents live together. They admitted at the hearing that mother is an alcoholic, that that condition presents a potential risk to T if she is left alone with mother, and that father lacks a custody order that would prevent mother from asserting control over T. Parents asserted, however, that they have voluntarily implemented a safety plan that prevents mother from parenting T alone and, for that reason, there is no risk of harm to T.

In assuming jurisdiction over T and establishing the wardship, the juvenile court found that mother's unresolved substance abuse presents a danger to T, and found further that, although father "has taken appropriate protective actions to not allow mother to be alone with the child," in the absence of an order granting father sole legal custody of T, he is unable to protect T from mother. *See* ORS 419B.100(1)(c) (juvenile court has exclusive jurisdiction in any case involving a person who is under 18 years of age and "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]"); *but see Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172, 316 P3d 424 (2013) (lack of a custody order alone does not provide a basis for jurisdiction, without evidence that one parent is unable to protect the child from the other parent or that the child will suffer some risk of actual harm because one parent lacks sole legal custody).

---

[1] ORS 419B.100 provides, in part:

"(1) *** [T]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"*****

"(c) Whose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

On appeal, parents challenged the juvenile court's determinations. The state now advises the court that father has obtained an order granting him sole legal custody of T and that, on the state's motion, the juvenile court has dismissed jurisdiction and terminated the wardship. The state seeks to dismiss the appeal, asserting that the juvenile court's dismissal of jurisdiction and termination of the wardship renders moot any claim raised on appeal with respect to the underlying jurisdictional judgment. For the reasons explained herein, we agree with the state that the appeal is moot; we therefore dismiss the appeal.

As the Oregon Supreme Court recently stated in *State v. Hemenway*, 353 Or 498, 500, 302 P3d 413 (2013), Oregon courts do not have authority to decide moot cases. A case is moot when it involves a matter that no longer is a controversy between the parties. *Yancy v. Shatzer*, 337 Or 345, 362-63, 97 P3d 1161 (2004). Because the juvenile court has dismissed its jurisdiction and terminated the wardship, the parties no longer have adverse interests. As we recently held in *Dept. of Human Services v. C. W. J.*, 260 Or App 180, 181-82, 316 P3d 423 (2013), a juvenile court's termination of jurisdiction and wardship ordinarily renders the parent's appeal of the underlying jurisdictional judgment moot.

Parents assert that *C. W. J.* was wrongly decided or is distinguishable. In *C. W. J.*, the father appealed a jurisdictional judgment entered on the ground that the father did not have a custody order and therefore could not protect the child from the child's mother, who presented a risk of harm to the child. After receiving notice that the juvenile court had entered a judgment terminating jurisdiction and the wardship, we dismissed the appeal as moot. We distinguished our opinions in *State v. S. T. S.*, 236 Or App 646, 238 P3d 53 (2010), and *State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 226 P3d 66 (2010), tmmwo cases in which we held that a dismissal of a jurisdictional judgment did not render the appeal moot because of the existence of collateral consequences from the underlying jurisdictional judgment. We noted that the bases for the underlying jurisdictional judgments in *L. B.* and *S. T. S.*—abuse or neglect in *L. B.*, 233 Or App at 365, and domestic violence causing risk of harm to the child in *S. T. S.*, 236 Or App at 650—involved

probable adverse consequences to the parent, including adverse employment consequences, adverse impact on the parent's records with the Department of Human Services (DHS), and social stigma associated with the factual bases for jurisdiction. We explained that the father in *C. W. J.* had not asserted any particular collateral consequence from the factual basis for jurisdiction—the lack of a custody order—and, further, that the considerations addressed in *S. T. S.* or *L. B.* did not apply. 260 Or App at 181-82.

Mother and father assert that, despite the juvenile court's dismissal of jurisdiction and termination of the wardship, and, despite our opinion to the contrary in *C. W. J.*, there are collateral consequences in a case such as this that make the appeal justiciable. They point to possible consequences both outside of and within the child welfare system.

Outside of the agency, parents assert, there is a social stigma associated with a judicial determination of jurisdiction. DHS responds that juvenile court records are generally confidential and not available to the public, ORS 419A.255(1) (records of a prior adjudication are maintained in the juvenile court, but are marked "confidential" and may be viewed only by the juvenile court judge, court staff, the child, the parents or guardians, service providers, and DHS), and, for that reason, are unlikely to give rise to any social stigma.

We agree with DHS on this point. It is possible that the fact of parents' involvement with DHS itself could result in social stigma, but that stigma would not be alleviated by a reversal of the underlying judgment. Additionally, jurisdiction has already been dismissed by the juvenile court. In light of the confidentiality of DHS and juvenile court records, we conclude that the possibility of a social stigma associated with the underlying jurisdictional judgment itself is minimal and speculative. *See S. T. S.*, 236 Or App at 654.

Mother argues that, although juvenile court and DHS records are technically confidential, there are many circumstances when those records are subject to disclosure. For example, citing administrative rules, mother points out that teachers, school volunteers, health and child care

providers, and contractors for the Oregon Health Authority, are required to submit to background checks and, in those circumstances, the jurisdictional judgment could be made available. Mother contends that a prospective employer may then fail to subsequently investigate the underlying bases for jurisdiction in order to determine the parent's nonculpability.

Mother asserts, further, that in the absence of a reversal of the underlying jurisdictional judgment, DHS will not reconsider its "founded" referral, which will remain on the parents' record within the agency, and subject to the agency's consideration on future referrals. Mother asserts that the presence of a "founded" referral in a DHS client file might also affect the records DHS is permitted to transmit to third parties. *See generally* OAR 413-010-0045(2)(a)(B) (requiring disclosure of client records "if no court order prohibits the disclosure and the client has authorized the Department in writing to disclose the records to the third party"). Because of those potential collateral consequences, mother contends, it is important that parents have an opportunity to challenge within DHS any "founded" referrals, and they assert that a reversal of the jurisdictional judgment is a necessary prerequisite.

The state responds that DHS's internal records include a history and prognosis that would not be affected by overturning either a "founded" referral or the underlying judgment establishing jurisdiction. Thus, the state asserts, there would be little practical effect in this case to reversing the underlying jurisdictional judgment when the juvenile court has already dismissed jurisdiction and terminated the wardship.

We recognize that in *L. B.*, we concluded that the potential consequences of an outstanding jurisdictional judgment like those cited here by parents were sufficient "collateral, practical effects" to make the appeal a live controversy. 233 Or App at 365. As previously noted, however, in *L. B.*, the child had unexplained injuries, and the factual basis for the underlying judgment was abuse or neglect; this is not the situation in this case. Additionally, in *L. B.*, the father submitted evidence that the existence of the jurisdictional

judgment had had an actual adverse effect on his employ-ment. *Id.* at 363-64. Similarly, in *S. T. S.*, 236 Or App at 650, the jurisdictional judgment included an express finding of domestic violence by the father against the mother. *Accord Dept. of Human Services v. W. A. C.*, 263 Or App 382, 328 P3d 769 (2014).

Here, no such factual findings underlie the jurisdic-tional judgment. The trial court expressly found that father "has taken appropriate protective actions to not allow Mother to be alone with the Child, including having his mother or other safe, responsible adults act as providers for her." But that fact alone was not, in the court's view, sufficient to elim-inate the risk to the child. The record shows that, because father did not have sole legal custody of the child, there was nothing to prevent mother from breaching the safety plan and gaining control over the child. In addition to the undis-puted findings regarding mother's substance abuse and her risk of harm to the child, the dispositive paragraph of the judgment recites, simply:

> "In [*State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009)] cited by the State, the Court of Appeals concluded that a lack of custody order without other evidence that the other parent is a present danger to the child is not sufficient to form a basis for jurisdiction. In this case, there is evidence that Mother presents a danger to the Child's welfare due to her unresolved substance abuse. Therefore, the Father is unable to protect the Child from the Mother without an order granting him sole legal custody."

Thus, the underlying factual bases for the juris-dictional judgment were the undisputed fact of mother's substance abuse and the fact that, without a custody order granting him sole legal custody, father lacked the ability to protect the child. Whether an underlying jurisdictional judgment presents collateral consequences will necessar-ily depend on the particular circumstances of the case, and whether the record shows more than a "mere possibility" of adverse consequence as a result of the challenged action—"a speculative consequence does not prevent a case from being moot." *See State v. Hauskins*, 251 Or App 34, 36, 281 P3d 669 (2012). The person asserting adverse consequences has the burden to establish them. *Id.* In the absence of some

evidence of a probable adverse effect on father, we conclude that the asserted collateral consequences—the possibility that the underlying jurisdictional judgment could affect future possible action by DHS and possible prospective employment—are mere possibilities and purely speculative. *Id.* ("A collateral consequence for purposes of mootness is a probable adverse consequence to the defendant as a result of the challenged action."); *see also Brumnett v. PSRB*, 315 Or 402, 407, 848 P2d 1194 (1993) (a "mere possibility" that a collateral consequence will occur does not prevent a case from being moot). We conclude, therefore, that mother and father have not met their burden to present collateral consequences sufficient to make their appeal justiciable.

For the same reasons, we reject mother and father's contention that this court should vacate the juvenile court's underlying jurisdictional judgment. *See City of Eugene v. PERB*, 341 Or 120, 126, 137 P3d 1288 (2006) (vacatur is an extraordinary remedy to which a party must show an equitable entitlement).

Appeal dismissed as moot.