Argued and submitted September 15, motion to dismiss appeal granted, appeal dismissed as moot October 19, 2016

In the Matter of K. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. M. S.,
*Appellant.*

Hood River County Circuit Court
15JU05765; A161757

383 P3d 991

Tiffany Keast argued the cause and filed the brief for appellant.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Duncan, Presiding Judge, and Garrett, Judge, and Wollheim, Senior Judge.

## GARRETT, J.

In this dependency case, father appeals the juvenile court's judgment assuming jurisdiction over his daughter, K. While the appeal was pending, the juvenile court dismissed jurisdiction and terminated the wardship. The Department of Human Services (DHS) then moved to dismiss father's appeal as moot. In opposition, father argues that the appeal is not moot because the judgment may have collateral effects on his ability to volunteer at his other children's schools and to coach youth sports. Father also cites the social stigma associated with the judgment. We conclude that father has not shown a significant probability that the judgment will produce adverse consequences, and we therefore dismiss the appeal.

Prior to the dependency proceedings, K lived with her mother and stepfather in Oregon, and father lived in California with his wife and other children. DHS became involved with K after receiving information that K had disclosed that her stepfather had sexually abused her. After a hearing, the juvenile court took jurisdiction and granted DHS legal custody and guardianship of K. The court based its judgment on findings that, among other things, K's mother continued to align with stepfather, and K's "conditions and circumstances" endangered her physical, mental, and emotional welfare. The court declined to place K with father, making two pertinent findings. First, the court found that K "has mental health difficulties that require supervision and treatment that [father] is unable to provide." Second, the court found that father's "attitude, behavior, and perception result in the refusal and/or failure to meet the child's exceptional needs that affect her safety."

Father timely appealed the jurisdictional judgment. While the appeal was pending, in June of 2016, the juvenile court terminated the wardship. DHS now moves to dismiss father's appeal as moot because father and K are no longer subject to the juvenile court's jurisdiction.

If "changed circumstances render an appeal moot, it will be dismissed." *Dept. of Human Services v. A. H.*, 275 Or App 788, 790, 365 P3d 1183 (2015) (internal quotation marks omitted). An appeal is moot when resolution of the

main issue in controversy will no longer have a practical impact on the rights of the parties. *Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 361 P3d 1 (2012). Ordinarily, termination of wardship and the juvenile court's jurisdiction renders an appeal from the underlying jurisdictional judgment moot. *Dept. of Human Services v. B. A.*, 263 Or App 675, 678, 330 P3d 47 (2014). In such a case, the party appealing the jurisdictional judgment must establish the existence of collateral consequences that prevent the controversy from being moot. *Id.* at 681-82. To preclude mootness, the asserted consequence "must have a significant probability of actually occurring; a speculative or merely possible effect is not enough." *Oregon School Activities v. Board of Education*, 244 Or App 506, 510, 260 P3d 735 (2011); *see also Dept. of Human Services v. L. E.*, 279 Or App 712, 713, 381 P3d 1097 (2016) ("[A] mere possibility of adverse consequences is not sufficient." (Internal quotation marks omitted.)).

In opposition to the state's motion to dismiss, father submitted a declaration that states, in relevant part:

"I volunteer at my children's schools. The existence of a juvenile-court judgment finding that I could not safely parent my daughter K may affect my ability to volunteer at my children's schools.

"I coach youth sports. The existence of a juvenile-court judgment finding that I could not safely parent my daughter K may affect my ability to coach youth sports."

In his brief, father does not argue that the judgment has already produced adverse effects. Instead, father argues that "[i]t is common sense that a juvenile-court finding that a parent's care would endanger a child would impact that parent's ability to care for or mentor *other* children." (Emphasis by father.)

We conclude that father has not established a significant probability that the judgment will produce adverse collateral consequences. Father may be correct that the existence of the jurisdictional judgment *could* impact his volunteer activities, but his declaration does not provide sufficient information to enable a conclusion that those consequences have a significant probability of actually occurring, as opposed to being merely speculative. Our conclusion rests

heavily on the fact that DHS and juvenile court records are confidential and unavailable to the public. *See* ORS 419A.255 (providing that the records of juvenile court proceedings may be disclosed to the parties and a limited set of other—primarily government—recipients, but "shall be withheld from public inspection"); *see also B. A.*, 263 Or App at 679 (finding significant the confidentiality of juvenile court records in assessing potential adverse consequences). Thus, even if father's "common sense" argument is partially correct—*i.e.*, even assuming that a person who knows about the juvenile court's findings might be less likely to entrust father with the care of other children—father has not made a showing that the existence of the judgment has a nonspeculative probability of being discovered.

Father has identified no applicable custom, policy, statute, rule, or practice that presents a significant likelihood that the jurisdictional judgment will be disclosed. We might reach a different conclusion if, for example, father identified a regulation or school policy that requires volunteers to disclose all judgments (confidential or not) or interactions with child welfare agencies, or even if he pointed to a general practice of such disclosure at his children's schools. Similarly, our view might be different if father made a showing that a background check would reveal the existence of a confidential juvenile court judgment. Without any such information, we can only speculate as to whether the confidential judgment is likely to adversely impact father's volunteer activities.

In his brief, father also argues that he is "socially stigmatized by the juvenile court's concluding that he had endangered or would endanger K if entrusted with her care." We assume for purposes of our analysis that the stigma associated with the juvenile court's findings could be a sufficiently adverse consequence to render this case justiciable. *But see State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 365, 226 P3d 66 (2010) (noting that "stigma alone might not create a justiciable case in every circumstance (particularly in light of the confidentiality of DHS and juvenile court records)"). Even under that assumption, father's argument fails for the same reasons described above. He can be stigmatized only to the extent that the juvenile court's findings

become known to other people, and he has not demonstrated a nonspeculative possibility that the existence of the judgment in this case will be discovered. *See L. E.*, 279 Or App at 715 (concluding, "in light of the confidentiality of DHS and juvenile court records," that the possibility of social stigma associated with a jurisdictional judgment was "minimal and speculative").

In sum, we conclude that father has not established a significant probability of collateral consequences arising from the jurisdictional judgment. Accordingly, we dismiss the appeal as moot.

Motion to dismiss appeal granted; appeal dismissed as moot.