Argued and submitted June 9, reversed July 28, 2010

In the Matter of K. A. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. Z.,
*Appellant.*

Marion County Circuit Court
J090761; Petition Number 111909MAR1;
A144712 (Control)

In the Matter of M. L. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. Z.,
*Appellant.*

Marion County Circuit Court
J090762; Petition Number 111909MAR2;
A144713

236 P3d 791

Holly Telerant, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

In this juvenile dependency case, the state alleged that mother's use of marijuana presented a reasonable likelihood of harm to her two children, and the juvenile court took jurisdiction over both children as to mother on that basis. Mother appeals from that juvenile court judgment and argues that the state has not established a "reasonable likelihood of harm" to the children by a preponderance of the evidence. We agree and, accordingly, reverse the judgment finding jurisdiction over the children.

The hearing on jurisdiction established the following undisputed facts. Mother and father have two children, who were ages 19 months and six months at the time of the hearing. The Department of Human Services (DHS) became involved with the children after receiving a report that a man was selling methamphetamine at mother and father's home in October 2009. At that time, DHS visited the home and observed conditions of concern. Father spoke rapidly and his eyes were "glossy" in appearance, raising concerns that father was under the influence of a controlled substance. DHS later discovered that father was a registered sex offender. The DHS representative found a number of empty 40-ounce beer bottles under the sink. Mother then arrived at the home with the children. She denied any drug abuse.

DHS workers testified at the hearing that the parents' home was "clean" and there was appropriate food for the children in the home; both children appeared happy and healthy. A DHS worker testified that mother "appears to have appropriate parenting skills."

Both parents agreed to a voluntary protective action plan while the investigation into whether father had completed required sex offender treatment was concluded. As part of the voluntary plan, the children went to stay with their maternal grandmother. Mother provided a urine sample for analysis.

Mother's urinalysis (UA) results were positive for marijuana. Mother admitted that she had used marijuana at a party a week or two before, but said she was not a frequent user and never used the drug around her children. Mother

provided another sample UA a few weeks later, which tested negative for marijuana and other drugs. For several weeks, DHS struggled to get in touch with mother because she did not have a working phone. Mother did not appear for a meeting in December 2009, but met with a DHS worker at a scheduled visitation time a week or so later. Mother was asked to do a UA in January 2010, but did not show up because, as mother explained, she had accompanied father to see his probation officer on that day and had become ill and was unable to return for her UA.

■       ORS 419B.100(1) provides, in part, that

"the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

(c)   Whose condition or circumstances are such as to endanger the welfare of the person or of others."

This court has said that the "key inquiry in determining whether 'condition[s] or circumstances' warrant jurisdiction is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *State ex rel Juv. Dept. v. T. S.*, 214 Or App 184, 191, 164 P3d 308, *rev den*, 343 Or 363 (2007) (quoting *State ex rel Juv. Dept. v. Vanbuskirk*, 202 Or App 401, 122 P3d 116 (2005)).

DHS filed dependency petitions requesting that the juvenile court take jurisdiction of the children under ORS 419B.100(1)(c). The dependency petitions alleged, in allegation 2A, that the children were within the jurisdiction of juvenile court for the following reason:

"The conditions or circumstances of the child are such as to endanger the welfare of the child by reason of the following facts: The child's mother has a chemical abuse problem involving marijuana that left untreated disrupts her ability and availability to parent, compromises her mental health, and endangers her ability to appropriately parent."

The state dismissed other allegations at the dependency hearing and proceeded only on that allegation and one other pertaining to father's substance abuse, because father admitted that he is an alcoholic.

The juvenile court, at the jurisdictional hearing, concluded that the state had met its burden with regard to allegation 2A—that mother had a chemical abuse problem that endangered the welfare of her children. The juvenile court announced the following findings and conclusions:

"The evidence regarding [mother] is a little bit more difficult to decipher [than father's]. And really it is the accumulation of things that concerns the Court. On October 14th, 2009, there is a positive UA, positive UA for marijuana. [Mother] admits marijuana use; says she had it at a party about a week before; said it's not something she frequently does; but admits to the use. Her—this somewhat diminishes the testimony of her friends who have come to testify on her behalf, given that they don't believe she uses illegal drugs and never suspected that she does * * *.

"At the—the next few weeks are somewhat concerning, in [mother's] failure to keep in contact with her children or with DHS. A no-show for the December 22nd meeting * * *. There was then a no-show for—I think it was some sort of decision meeting or a family decision meeting on December 22nd.

"The breaking contact between the 29th—December 29th and January 12th is also concerning to the Court, coupled with [the children's grandmother's] frustration over [mother's] involvement or lack thereof with the children. I'm not sure what was going on there. * * *

"And then on [January 12] DHS asking [mother] to provide a UA. * * * The UA is, frankly, the Court's only way to know if you're on track. And I am certain that you were told that failure to attend the UA, or dilute UAs, are positive UAs to the Court. * * * So now January 12th to me is a positive UA. * * *

"And so it is the cumulation of all these things together that concerns the Court. I do find that the State has proven by a preponderance of the evidence that Mother has a chemical abuse problem."

Thus, the juvenile court found that the state had proved by a preponderance of the evidence that mother has a chemical abuse problem, as alleged in allegation 2A of the petition, and therefore "found her in jurisdiction."[1] Mother

---

[1] The trial court also made findings with regard to allegation 2D, that father had a substance abuse problem, and "[took] jurisdiction over father for that

assigns error to that conclusion, arguing that the state had not shown, by a preponderance of the evidence, that there is a reasonable likelihood of harm to the welfare of the child because the state has not shown any nexus between the parent's behavior and the particular risk to the child at issue. *See State ex rel Dept. of Human Services v. N. S.*, 229 Or App 151, 157-58, 211 P3d 293 (2009). We agree.

■ Our review is governed by ORS 19.415. For this type of case, ORS 19.415(3)(b) provides that "the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record." The parties have not requested *de novo* review, and we decline to conduct such a review. Accordingly, we review the juvenile court's legal conclusions for errors of law, but are bound by its findings of historical fact unless there is no evidence to support those findings. *Ball v. Gladden*, 250 Or 485, 488, 443 P2d 621 (1968); *Emmert v. No Problem Harry, Inc.*, 222 Or App 151, 159, 192 P3d 844 (2008). Where findings on disputed issues of fact are not made but there is evidence supporting more than one possible factual conclusion, we presume that the juvenile court decided the facts consistently with its ultimate legal conclusion. *Id.* at 159. Therefore, our task is to review the facts found by the juvenile court to determine whether they are supported by any evidence, and then to determine whether, as a matter of law, those facts together with facts implicitly found by the juvenile court, provide a basis for juvenile court jurisdiction under ORS 419B.100(1)(c).

The record lacks evidence showing that mother's use of marijuana, her "chemical abuse problem" as found by the trial court, is a condition or circumstance that poses any risk to her children. That evidence is necessary to establish jurisdiction over the children under ORS 419B.100(1)(c). For example, this court has explained that an unpleasant condition resulting from lack of cleanliness in the children's home, although concerning, would not justify dependency jurisdiction without some showing that the children's welfare is at risk:

---

allegation." However, the trial court did not make findings to support taking jurisdiction on the basis of any other allegations with regard to mother.

"[A]lthough ORS 419B.090 reflects the legislature's policy decision concerning juvenile dependency, ORS 419B.100 implements those policies and, in the context of the present case, requires a showing that there exist conditions or circumstances that 'endanger the welfare' of the children. ORS 419B.100(1)(c). Endanger connotes exposure to 'danger,' which generally involves 'the state of being threatened with serious loss or injury[.]' *Webster's* [*Third New Int'l Dictionary*] 573 [(unabridged ed 2002)]. A child is not in 'danger,' as that word is commonly understood, simply because the record demonstrates that the child or the child's clothing emits an unpleasant odor."

*State ex rel Dept. of Human Services v. Shugars,* 202 Or App 302, 321, 121 P3d 702 (2005). Indeed, even where a parent's substance abuse is the "condition or circumstance" at issue, we have reversed a judgment taking jurisdiction where the state had not shown that the parent's substance abuse created a "reasonable likelihood of harm" to the children. In *State ex rel Dept. of Human Services v. D. T. C.,* 231 Or App 544, 555, 219 P3d 610 (2009), the father had had an alcohol abuse problem that had on occasion made him "mean" or "controlling" towards the children and had refused to participate in treatment or provide samples for UA. We nonetheless concluded that there was insufficient evidence that the father's condition created a reasonable likelihood of harm to the children in the past or at the time of the dependency hearing.

Here, relying on *State ex rel Juv. Dept. v. Smith,* 316 Or 646, 653, 853 P2d 282 (1993), the state argues that "[a] condition or circumstance need not involve the child directly, but may be found harmful by reason of creating a harmful environment for the child." It is true that a condition not directly involving a child may nonetheless create a harmful environment for the child, but the burden is on the state to show that harm is, in fact, present. In *Smith,* the father used drugs and engaged in sexual contact with another child while his own child was in the home. *Id.* at 649. Here, the juvenile court did not find that mother had used drugs in the presence of children, or in the home, or that her drug use created a harmful environment for the children. The juvenile court did not explicitly find that mother's use of drugs had endangered or would likely endanger the children, and our review of the

record reveals no evidence that would support an implicit factual conclusion to that effect. Therefore, the facts of this case do not support a necessary finding for taking jurisdiction under ORS 419B.100(1)(c) because there is no evidence that mother's substance abuse was a "condition or circumstance" that "endanger[ed] the welfare" of her children.

Reversed.