Argued and submitted November 6, 2013, reversed and remanded with instructions to terminate the wardship March 5, 2014

In the Matter of A. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. A. S., JR.,
*Appellant.*

Coos County Circuit Court
12JV0015;
Petition Number 021012AS;
A154493

323 P3d 484

Shannon Storey, Senior Deputy Public Defender, argued the cause for appellant. On the opening brief were Peter Gartlan, Chief Defender, and Valerie Colas, Deputy Public

Defender. With her on the reply brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Cecil A. Reniche-Smith, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

## EGAN, J.

Father appeals from a juvenile court judgment after a permanency hearing relating to his daughter, A, assigning error to the court's continuation of the permanency plan of reunification and denial of his motion to dismiss jurisdiction and terminate the wardship. We conclude that the record is legally insufficient to support the juvenile court's finding that the bases for continued jurisdiction persisted. The grounds for jurisdiction recited by the juvenile court did not pose a current threat of serious loss or injury to A that is reasonably likely to be realized. Therefore, we reverse and remand with instructions to terminate the wardship.[1]

The parties do not request that we exercise our discretion to review the facts of this case *de novo*, ORS 19.415(3)(b), and we decline to do so. ORAP 5.40(8)(a). Thus, we view the evidence "as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's [determination] and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Pursuant to that standard, we recite the facts consistently with the juvenile court's expressed and implied findings. Father was a resident of the State of Washington when A was removed from mother's care in Oregon in February 2012.[2] DHS petitioned the juvenile court to take jurisdiction over A, pursuant to ORS 419B.100(1)(c).[3] Father stipulated to the juvenile court's jurisdiction based on the following pertinent facts:

---

[1] In light of our holding that the record is legally insufficient to support the juvenile court's continued jurisdiction, we do not reach father's remaining assignments of error.

[2] Mother is not a party to this appeal. Father subsequently remarried, and we refer to his current wife as "wife" throughout our opinion.

[3] As relevant here, ORS 419B.100 provides for dependency jurisdiction as follows:

"(1) *** [T]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(c) Whose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

"g)   Further, DHS spoke with [father] on February 24, 2012[,] and he stated his [wife] currently has an open DHS case in Douglas County as to her two children ***. [Those] children *** are not in [wife's] care due to [DHS] intervention, although Washington State Child Welfare has determined it would be safe for their newborn son, [G], [t]o remain in their care.

"h)   Further, [wife]'s *** two children were removed from her care in 2009 due to the condition of her home, domestic violence, and [wife]'s drug use.

"* * * * *

"j)   [S]ince splitting up with [mother] in September 2010, [father] has not been able to have very much contact with [A]. He last had a face[-]to[-]face visit approximately eight months ago in California. [Father] and [A] need the assistance of DHS to help them reestablish their relationship.

"k)   Further, [father] does not have custody of [A] and would be unable to protect her from [mother]'s drug use and neglect."

Before the Oregon juvenile court assumed jurisdiction over A, the Washington Department of Social and Health Services (WDSHS) had opened a dependency case for father's youngest child, G, in Washington. G was initially placed in the custody of wife's grandmother, but father and wife shared a residence with G and wife's grandmother at all times. G was returned to the custody of his parents, and all three then moved to a separate residence while the WDSHS dependency case remained open.

In July and December 2012, to enable placement of A with father, DHS requested that WDSHS complete a home study of father's home through the Interstate Compact for the Placement of Children (ICPC). On both occasions, WDSHS summarily denied father approval as a placement resource, without completing a home study. WDSHS closed its dependency case relating to G in February 2013. In March 2013, father participated in a parent-child interaction facilitated by DHS, which yielded positive results, such that the evaluator recommended that DHS place A with father. In April 2013, DHS again asked WDSHS to evaluate father's

home.[4] Father also successfully maintained ongoing telephone contact with A, and he and wife travelled to Oregon to have face-to-face visits with A once per month.

In May 2013, the juvenile court held a permanency hearing. DHS requested that the court continue the permanency plan of reunification with father. As relevant here, father's attorney filed a motion to dismiss jurisdiction and terminate the wardship. Father argued that he had ameliorated the adjudicated bases for jurisdiction, and to the extent that any of the jurisdictional bases persisted, they did not expose A to a current threat of serious loss or injury that was likely to be realized.

DHS's primary argument at the hearing in support of continuing jurisdiction was that more time was necessary to obtain a home study through the Washington ICPC so that DHS could place A with father. DHS also argued that the facts on which dependency jurisdiction had been based, as to father, persisted.

No sworn testimony was offered at the permanency hearing. DHS offered 22 exhibits, all of which were received into evidence without objection. Much of the evidence presented focused on mother's past drug and alcohol use, mother's sporadic progress at engaging in recommended services, general information regarding the WDSHS case relating to G and the Douglas County cases relating to wife's two older children, a recent incident involving wife in which she spoke to her two older children in an inappropriate manner during a visit, the successful parent-child interaction between father and A, father's and wife's ongoing positive contact, and A's recent behavioral issues in which she had begun acting out in response to visits with mother.

With regard to the jurisdictional basis that A's conditions or circumstances are endangered due to the Douglas County cases—*i.e.*, paragraph "g" and paragraph "h"—DHS submitted minimal evidence, providing only that

---

[4] Although WDSHS had issued father two previous summary denials, we note that this may have been a futile effort on the part of DHS, because the Washington Court of Appeals has ruled that the ICPC does not apply to parental placements. *In re Dependency of D. F.-M.*, 157 Wash App 179, 236 P3d 961 (2010), *rev den*, 170 Wash 2d 1026 (2011).

those children were removed from wife's custody and care in 2009, due to the condition of her home, domestic violence, and drug use. Reportedly, at the time of the permanency hearing, the Douglas County cases were close to finalization. Wife planned to consent to placement of the children with a relative in Oregon in a permanent guardianship. A's DHS caseworker was investigating whether wife presented any safety concerns to A by contacting the Douglas County caseworkers, but she had not received adverse information to present to the court at the time of the hearing.

At the close of the hearing, the juvenile court denied father's motion to dismiss jurisdiction and terminate the wardship, finding as follows:

"So, the other Motion that I have pending is the Motion to Dismiss. And I'm going to deny the Motion to Dismiss. * * * I do agree with the State's argument that several of the concerns identified in the Amended Petition have not yet been ameliorated.

"One is Letter (k), where it alleges that [father] does not have [a] Custody Order at this point in time. I indicated earlier that he could certainly file for Custody. I encourage him to do that. My understanding of the law * * * is * * * he can't yet get a Status Quo Order because the child has not been with him for three months.

"And I'm not aware that there would be a basis—at least, what I've heard so far—for an Immediate Danger Custody Order [under ORS 107.097(3)(a)[5]], because [A]—I mean, *there would be no evidence [that A] is in immediate danger. Mother is not a threat to this child. She's not up there doing anything bad to this child.* So, I don't think that [father] could go forward and get an Immediate Danger Custody Order.

---

[5] ORS 107.097(3)(a) provides, in pertinent part, that

"[a] court may enter ex parte a temporary order providing for the custody of, or parenting time with, a child if:

"(A) The party requesting an order * * * presents an affidavit *alleging that the child is in immediate danger*; and

"(B) The court finds, based on the facts presented * * * that the child is in immediate danger."

(Emphasis added.)

"So, [Letter] (k) is still out there and needs to be resolved.

"And I also agree with Letters (g) and (h). On this record, *I don't have any evidence* that the condition of the home, or some issues with regard to [wife]'s domestic violence *** that those issues have been resolved.

"The argument that, 'Look, they must have been resolved because [G] was returned to their care,' I'd be speculating if I went down that road. And I just can't do this on this record.

"So, I'm going to deny the Motion to Dismiss, finding specifically—

"And *** I should indicate that Paragraphs (g), (h), and (k) of the Amended Petitions, I find *** those matters have not yet been ameliorated to my satisfaction."

(Emphasis added.) Thus, the court concluded that continued jurisdiction was warranted, based on paragraphs "g," "h," and "k" from the amended petition, set forth above, due to wife's open dependency cases relating to her older children in Oregon (the Douglas County cases) and father's lack of a custody order over A.

On appeal, father asserts that the juvenile court erred in denying the motion to dismiss jurisdiction over A.

ORS 419B.100(1)(c) grants a juvenile court jurisdiction over a child "[w]hose condition or circumstances are such as to endanger the welfare" of the child. A child determined to be within the juvenile court's jurisdiction becomes a ward of the court. ORS 419B.328(1). "A wardship cannot continue if the jurisdictional facts on which it is based have ceased to exist." *Dept. of Human Services v. D. M.*, 248 Or App 683, 685, 275 P3d 971 (2012). DHS also has the burden to prove, by a preponderance of the evidence, that the facts on which jurisdiction is based "persist to the degree that they pose a current threat of serious loss or injury that is reasonably likely to be realized." *Dept. of Human Services v. J. M.*, 260 Or App 261, 267, 317 P3d 402 (2013).

Father contends that, although some of the facts on which jurisdiction was based persist, DHS did not prove that those facts would expose A to a current threat of serious loss or injury to A. Specifically, father asserts that DHS

failed to present sufficient evidence that the facts presented in paragraphs "g" and "h"—*viz.*, the Douglas County cases—would expose A to a threat of serious loss or injury.

Although some of our cases have stood for the proposition that evidence sufficient to establish jurisdiction as to one child is a sufficient jurisdictional basis for other children in the same household, we must differentiate "among the circumstances of each child." *State ex rel Dept. of Human Services v. Shugars*, 202 Or App 302, 315, 121 P3d 702 (2005); *see State ex rel Juv. Dept. v. Smith*, 316 Or 646, 853 P2d 282 (1993) (upholding jurisdiction over son where the father sexually abused son's 12-year-old aunt, concluding that such abuse constituted "conditions or circumstances * * * such as to endanger the child's welfare" because the abuse created a harmful environment for the son); *State ex rel Juv. Dept. v. Brammer*, 133 Or App 544, 549, 892 P2d 720, *rev den*, 321 Or 268 (1995) (upholding jurisdiction over three children after the mother was convicted of repeatedly sexually abusing an unrelated child in the family home, concluding that jurisdiction was appropriate because the mother's abuse of the unrelated child created a harmful environment for her own children). The question becomes whether the abuse suffered by one child creates a harmful environment for the other child so that the juvenile court should exercise jurisdiction. *Brammer*, 133 Or App at 549.

Here, wife's children had been out of her care for a significant period of time, having been involved with DHS at least since 2009. However, the exact extent of any prior involvement by DHS in the Douglas County cases is not apparent from the record. The limited evidence presented by DHS demonstrates that wife had prior issues in Oregon relating to "the condition of her home, domestic violence, and * * * drug use." The juvenile court concluded that, on this record, it did not have "any evidence" of the condition of the home or that wife's domestic violence issues had been resolved. Notwithstanding that conclusion, no evidence was presented that the Douglas County cases remained open for any reason other than finalizing the guardianship. That is, there is also no evidence in the record from which the juvenile court could have inferred that the Douglas County cases contained some jurisdictional allegation that persisted and

would have created a harmful environment for A or otherwise present a danger to A. Although it is true that safety concerns *may* have existed, based on the continued existence of the Douglas County cases at the time of the permanency hearing, DHS was still in the process of investigating whether those concerns existed and failed to present any evidence that such safety concerns persisted.

Simply put, wife has previously engaged in conduct that led to DHS involvement in the Douglas County cases. The evidence submitted by DHS—that wife anticipated consenting to a permanent guardianship, such that those children would not be returned to her care—may constitute a failure on wife's part to address and remedy any of the issues stemming from the Douglas County cases, which "may well fall short of what would be expected of [a] 'model parent[.]'" *Shugars*, 202 Or App at 322. However, DHS did not present any evidence that wife's actions, or her failure to act, in the Douglas County cases "pose a current threat of serious loss or injury" to A "that is reasonably likely to be realized." *J. M.*, 260 Or App at 267. Thus, we conclude that, although the Douglas County cases remained open, DHS presented insufficient evidence from which the juvenile court could have concluded that the jurisdictional bases for A, that were premised on the Douglas County cases—paragraph "g" and paragraph "h"—persisted.

We turn to examine the juvenile court's conclusion that A's conditions or circumstances continued to be endangered due to father's lack of sole legal custody, such that he "would be unable to protect her from [mother]'s drug use and neglect"—*i.e.*, paragraph "k" from the amended petition.

At the hearing, the parties engaged in a lengthy colloquy regarding the status of father's custody at the hearing. Father filed for sole legal custody of A on the day of the review hearing. At the hearing, in response to the court's inquiry regarding how father would protect A if mother travelled to Washington and requested A over father's objection, father's attorney represented to the court her intent to file an *ex parte* motion and order on father's behalf so that father would be granted immediate custody of A. After a prolonged discussion, the court intimated that such orders

were only for use when there was an "immediate danger" and, were one requested by father, the court would not grant such an order in this case, stating:

"I issue those [*ex parte*] Orders when I'm convinced the Child is in imminent, immediate danger, which would be *** exposing [the child] to drugs, domestic violence. Just the fact that [father] needs a Custody Order wouldn't be enough."

The state then argued that, based on the court's representations, allegation "k"—father's lack of a custody order—had not been ameliorated. The juvenile court ultimately agreed.

Father relies on *State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009), for the proposition that, without some evidence that mother is a present danger to A's welfare, his lack of a custody order alone is an insufficient basis for continued juvenile court jurisdiction. The state contends that, on the facts, *A. L. M.* is distinguishable from this case.

In *A. L. M.*, the child had been removed from the parents' custody due to the mother's neglect, the father's substance abuse, and the father's inability to protect the child due to lack of a custody order. After a permanency hearing, the juvenile court vacated the child's commitment to DHS, but continued the juvenile court's jurisdiction over the child. After completing a *de novo* review of the record, we reversed the juvenile court and remanded the case with instructions to terminate the wardship. We concluded that,

"[b]ased on all the evidence *** presented in this case, the only allegation of the amended petition that appears to still be present is [the] father's lack of a custody order with respect to [the child]. However, without some evidence that [the] mother is a present danger to [the child]'s welfare, the lack of a custody order alone is not sufficient for jurisdiction pursuant to ORS 419B.100."

*A. L. M.*, 232 Or App at 16. We explained that what was necessary to sustain jurisdiction was some evidence that, at the time of the hearing, the child's welfare was endangered by his or her present circumstances, or, alternatively, some evidence that the mother's existing circumstances presented a threat of harm to the child's welfare. *Id.* The child

had been placed with the father for more than six months when the review hearing occurred. The child was doing well, there were no safety concerns, DHS had no further services to offer, and the child's commitment to DHS was vacated at the hearing. *Id.* at 23 (Sercombe, J., dissenting). The dissent noted that, at the time of the review hearing, the mother was not operating under a case plan for reunification with this child, and the mother's parental rights to two other children were being terminated. *Id.* at 27-28. The dissent asserted that, because the mother presented no evidence that any facts about her situation had changed, continued jurisdiction was appropriate. *Id.* The majority rejected that notion, and instead focused on whether any evidence had been presented regarding the mother's present circumstances and whether those circumstances presented a danger to the child, such that the father's lack of a custody order presented a danger to the child sufficient to support continued jurisdiction. We concluded that it did not. *A. L. M.*, 232 Or App at 17-18.

Although *A. L. M.* "does not dictate that in all circumstances the lack of a custody order alone is insufficient to support jurisdiction[,] * * * jurisdiction [i]s no longer proper once" the facts that are the bases for jurisdiction have been addressed and rectified. *Dept. of Human Services v. J. N.*, 253 Or App 494, 503 n 5, 291 P3d 765 (2012) (discussing *A. L. M.*, 232 Or App at 17-18). When "there was no evidence that the lack of a custody order would expose the child to a reasonable likelihood of harm[,] * * * continued jurisdiction was improper." *J. N.*, 253 Or App at 503 n 5. Stated another way, without evidence that one parent is unable to protect the child from the other parent, or that the child will suffer some risk of actual harm because one parent lacks sole legal custody, lack of a custody order alone is an insufficient basis for jurisdiction. *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172, 316 P3d 424 (2013).

In this case, DHS presented no evidence that mother's circumstances, as they existed at the time of the permanency hearing, posed a danger to A, such that father's lack of a custody order presented a reasonable likelihood of danger to A. The juvenile court considered whether A would suffer some risk of actual, immediate harm due to father's

lack of sole legal custody. [6] DHS presented no evidence that mother would engage in behaviors from which father would need to protect A; the hypothetical situation put forth by the court was not supported by any evidence in the record and was pure conjecture.

Because DHS failed to establish a current risk of serious loss or injury to A for each of the bases on which the juvenile court concluded continued jurisdiction was warranted, we conclude that the record is legally insufficient to support the juvenile court's continued jurisdiction. Thus, the juvenile court erred in denying father's motion to dismiss.

Reversed and remanded with instructions to terminate the wardship.

---

[6] Although the statutory standards under ORS 419B.100(1)(c) ("endangered") and ORS 107.097(3)(a)(A) and (B) ("immediate danger") are not identical, for purposes of this opinion, we conclude that the former standard has a broad scope, as defined by our case law—*viz.*, "whether the child is exposed to conditions or circumstances that present a current threat of serious loss or injury"—which encompasses the latter. *See R. L. F.*, 260 Or App at 171-72 (setting forth standard for "endangered").

The trial court, in the course of determining whether father would be able to quickly secure custody of A, remarked that father would not be able to obtain an "immediate danger" order. Although the requirements for such an order are greater than those for jurisdiction, the court did note that "Mother is not a threat to this child. She's not up there doing anything bad to this child." That comment supports our conclusion that father's lack of legal custody of A did not endanger A.