Submitted February 11, reversed March 26, 2014

In the Matter of J. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

I. S.,
*Appellant.*

Klamath County Circuit Court
0400120JV3;
Petition Number 1300235M;
A155214 (Control)

In the Matter of B. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

I. S.,
*Appellant.*

Klamath County Circuit Court
0400120JV2;
Petition Number 1300235M;
A155215

324 P3d 486

Peter Gartlan, Chief Defender, and Shannon Storey, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin K. Galli, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

In this consolidated juvenile dependency appeal, father appeals a judgment finding jurisdiction over his two children under ORS 419B.100(1)(c), on the basis that father had done nothing to assert legal custody of his children despite his awareness that mother could not safely parent them. On appeal, father argues that the Department of Human Services (DHS) was required to prove that father's lack of a custody order exposed the children to a risk of serious loss or injury and that it failed to meet that burden. Accordingly, father argues that the juvenile court erred in finding jurisdiction over his children on that basis.[1] We agree and reverse the judgment finding jurisdiction over the children as to father.

None of the parties request *de novo* review, and we decline to conduct such a review in this case. *See* ORS 19.415(3)(b) (in nontermination cases, we have discretion to exercise *de novo* review). Accordingly, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). In other words, "our function is limited to determining whether the evidence was sufficient to permit the challenged determination." *Id.* at 640. We state the facts consistently with that standard.

Mother and father have two children, who were ages 12 and 13 at the time of the jurisdictional hearing. DHS first became involved with the family in 2002 and, since then, has offered services to the family and performed numerous assessments. Mother and father have not lived together for

---

[1] In all, father raises six assignments of error on appeal. In assignments one and three, he assigns error to the trial court's denial of his motion to dismiss the allegation against him as to each child; in assignments two and five, father assigns error to the juvenile court asserting jurisdiction based on the allegation against him as to each child; and in assignments three and six, father assigns error to the juvenile court asserting jurisdiction over each child. In his brief, father set out a combined argument for all of the assignments of error. Because we agree with father's argument that the evidence was insufficient to support jurisdiction in this case, we do not discuss each assignment individually.

a number of years. Father lived and worked out of state, though he would periodically return to Oregon to visit the children. As a result of that arrangement, the children lived primarily with mother, though for at least two years they had lived with father in Nevada. Mother and father had no formal agreement or judgment governing their custody of the children.

Mother has a history of substance abuse problems, with cycles of sobriety followed by relapse. On two occasions, father removed the children from mother's custody, once when she had relapsed and "more or less just kind of left," and again when he thought that mother's boyfriend was "not okay." In late February or early March of 2013, when father was in Oregon, he met with a DHS employee to discuss his concerns about mother's recent behavior. When DHS had first made contact with the family in 2002, one of its recommendations was that father obtain custody. At the 2013 meeting, father said that he wanted to know more about obtaining custody of his children. Father expressed an interest in obtaining custody because he was concerned that mother had been using illegal substances, that she was associating with people that were "concerning," and that the children had not been attending school regularly. Despite having shared those concerns with the DHS employee, shortly thereafter, father returned to Nevada for work. Father testified that mother was "clean," or not using drugs, at that point, and the children remained with mother.

Mother then relapsed. According to father, her relapse occurred unexpectedly, because usually when she got clean she would "stay clean for a long while." In May 2013, DHS removed the children from mother's custody, placed them in substitute care, and filed a petition seeking jurisdiction over the children as to both mother and father pursuant to ORS 419B.100(1)(c). As to mother, DHS alleged that jurisdiction was proper based on her substance abuse problem, her inability to safely parent the children, her failure to provide for the educational needs of the children, her failure to maintain them in school, and her involvement in criminal activities. In July 2013, the juvenile court held a jurisdictional hearing as to the allegations against mother and, based only on the allegations as to mother, the court

entered a jurisdiction and disposition judgment making the children wards of the court.

Father, meanwhile, had quit his job and moved back to Oregon in July and was actively seeking a job and a place where he could live with the children. Father still had not sought legal custody of the children.

The jurisdictional hearing as to the allegations against father was held in September 2013. DHS requested that the court take jurisdiction of the children because father was "aware that the mother * * * cannot safely parent the children due to issues of substance abuse and neglect and has done nothing to assert custody of his children," and that that "condition places the children under a threat of harm."[2] At the hearing, DHS presented evidence that mother had ongoing issues with substance abuse and criminal activity; that father was aware of mother's substance abuse issues; that father was aware that those issues made mother unfit to parent their children; and that father had considered seeking legal custody of the children but had not taken any steps to establish legal custody.

When DHS examined the children's caseworker, Crawford, and asked her about the threat of harm that the children faced as a result of father's failure to assert custody, the following colloquy took place:

"[DHS:]    How is it that [father's] failure to assert custody of the children placed those children under a threat of harm, based on your training and experience?

"[CRAWFORD:]    Well, based upon my training and experience, [mother] has obvious issues with * * * substance abuse, and instability—her involvement in ongoing criminal activity. And [father] has in the past allowed her to have contact and/or placed the children with her in his absence and has failed to protect. So, I think that that is a basis for us to continue to be involved.

"[DHS:]    So if I understand correctly, could you—is it the idea that they would need a parent to protect their

---

[2] In its petition, DHS also had alleged that father had in the past been involved with DHS and that father was "unavailable" to be a "custodial resource." The court dismissed those allegations at DHS's request.

\*\*\* needs and so there's a potential of neglect if they don't have a strong parent to protect their needs from the other parent?

"[CRAWFORD:]   Yes."

Both DHS and the court inquired as to why father had not established legal custody of the children. Father testified that, up to that point, he had not sought legal custody because he did not understand its legal import, and he said that he did not think that it was practically necessary given that mother had never contested his custody in the past. Father explained mother's reaction to his taking physical custody of the children on the two occasions in the past during cross-examination:

"[CHILDREN'S ATTORNEY:]   Okay. And during those two times, she just, she wouldn't give you a fight about that, you taking the children?

"[FATHER:]   No, she has not.

"[CHILDREN'S ATTORNEY:]   She has not?

"[FATHER:]   She doesn't like it, but she does accept it.

"[CHILDREN'S ATTORNEY:]   Well, how do you know she doesn't like it?

"[FATHER:]   I wouldn't, either. No parent is okay, you know—

"[CHILDREN'S ATTORNEY:]   I mean, does she tell you that or did she try to stop you? Did she—

"[FATHER:]   Just in her mannerisms. She doesn't get violent about it, no. Once she did argue but she gave up rather quickly on it."

As to the argument, father testified that mother "argued with me on the phone about it but she didn't put up much of a fight." Father also indicated that he was beginning to understand the importance of having a custody order and intended to seek one after the hearing. Father also testified that, because mother's substance-abuse problems were worsening, he did not intend to relinquish custody to mother in the future, and he "couldn't see leaving the kids with her for more than a few hours at a time until such time as she's proven that she is, for lack of a better word, worthy."

At the close of the testimony, the court asked DHS why the court should take jurisdiction over the children based on the allegation against father. DHS responded:

"In this situation it's not just [that father does not have legal custody] but [father], I think, has made good efforts over time but he fails to recognize the importance of getting that legal custody due to the fact of [mother's] continued substance abuse and neglect of the children, and I think that that's where the big red flag is here. It's not just a simple, oh, he needs to get, he needs the agency's help to protect the kids but rather this next step. Because he's had a good history, he's relied upon that good history, but unfortunately [mother's] history is also one of relapse. And it's—I believe he even testified himself, the relapse happened much more quickly this time than before."

The juvenile court agreed with DHS and announced the following findings and conclusion at the hearing:

"[S]pecifically from [father's] own testimony he has known that the Court's been involved here since May and he still fails to see that he needs to—he's done nothing to even attempt to get custody.

"I agree with [DHS]; [father has] demonstrated that he's not grasping the gravity of the situation and because of that, the Court takes jurisdiction."

The court then entered another jurisdiction and disposition judgment making the children wards of the court based on the allegation against father. Father timely appealed that judgment, but did not appeal the earlier jurisdiction judgment that had asserted jurisdiction over his children based on the allegations against mother.

On appeal, father argues that a parent's lack of a custody order alone cannot support jurisdiction under ORS 419B.100(1)(c), and that DHS was required, but failed, to prove that father's lack of a custody order presented a current risk of harm to the children. Father argues that the juvenile court therefore erred when it asserted jurisdiction over his children on that basis.

DHS responds that the juvenile court did not base jurisdiction on father's lack of a custody order alone but, rather, on that fact combined with mother's neglect of the

children and the court's concern about father's ability to protect the children from mother. According to DHS, it presented sufficient evidence to prove that there is a reasonable likelihood of harm to the children due to father's lack of a custody order because it demonstrated that father has a history of failing to protect the children from mother, that father has done nothing to gain legal custody of the children, and "that mother does not want father to have custody of the children and that she argued with father in the past when he tried to take the children from her." In DHS's view, because mother poses a risk to the children and because father would be unable to prevent mother from removing the children from his care without a custody order, there is a reasonable likelihood of harm to the children. We disagree.

Under ORS 419B.100(1)(c), juvenile dependency jurisdiction is proper when a child's "condition or circumstances are such as to endanger the welfare" of the child. A child is "endangered" if the child is exposed to conditions or circumstances that "present a current threat of serious loss or injury." *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013). The key inquiry in determining whether jurisdiction is proper is "whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010) (internal quotation marks omitted). DHS has the burden to prove that there is "a nexus between the allegedly risk-causing conduct and the harm to the child," and that the risk of harm is present at the time of the hearing and is "not merely speculative." *C. J. T.*, 258 Or App at 62. In cases in which the allegation of harm involves the lack of a custody order, "jurisdiction is not proper if the lack of a custody order would not expose the child to a reasonable likelihood of harm." *Dept. of Human Services v. J. N.*, 253 Or App 494, 503 n 5, 291 P3d 765 (2012), *rev den*, 353 Or 747 (2013). "Stated another way, without evidence that one parent is unable to protect the child from the other parent, or that the child will suffer some risk of actual harm because one parent lacks sole legal custody, lack of a custody order alone is an insufficient basis for jurisdiction." *Dept. of Human Services v. D. A. S.*, 261 Or App 538, 323 P3d 484 (2014).

In light of those requirements, we decide the following question: did the record permit the juvenile court to determine that father's lack of a custody order gave rise to a current threat of serious loss or injury to the children and that there was a reasonable likelihood that the threat would be realized? We conclude that, on this record, there was insufficient evidence to support a determination that there was a nonspeculative, current threat of serious loss or injury to the children due to father's lack of a custody order.

The court expressly found that father had not established legal custody at the time of the hearing. However, the court did not make any findings that the children would be exposed to a reasonable likelihood of harm as a result of father's lack of a custody order. Nor would the evidence adduced at the hearing support such a finding. Contrary to DHS's argument, the record does not demonstrate that, absent a custody order, father would be unable to prevent mother from removing the children from his care. The record indicates that mother does not have legal custody of the children, and therefore she would not be able to use legal custody to remove the children from father's physical custody. There was no evidence that mother had, in the past, ever tried to physically prevent father from taking physical custody or attempted to remove the children from father's care. On the contrary, father testified that he and mother had never had any issues when it came to custody decisions, and that he was not concerned that mother would interfere in the future. Indeed, the most that the record establishes is that, although mother did not like having to cede physical custody of the children to father in the past, she had not actively contested his custody. Therefore, the state's conclusory "risk of harm" argument that "father would be unable to prevent mother from removing the children from his care" without a custody order is not supported by evidence in the record. For the same reasons, DHS failed to prove a reasonable likelihood of harm to the children at the time of the hearing based on father's lack of understanding that such an order was important, which was the express basis of the juvenile court's ruling.

In the absence of evidence that father will not be able to protect the children from mother without a custody

order, the requirements under ORS 419B.100(1)(c) to establish jurisdiction over the children for father's lack of a custody order are not satisfied, and there was insufficient evidence to support the juvenile court's assertion of jurisdiction on that basis. *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172, 316 P3d 424 (2013); *State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009). Accordingly, we reverse.

Reversed.