Argued and submitted August 11, reversed September 30, 2015

In the Matter of J. M. L. A. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. R.,
*Appellant.*

Curry County Circuit Court
14JV0056;
Petition Number 14JV005601;
A158638 (Control)

In the Matter of J. M. R., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. R.,
*Appellant.*

Curry County Circuit Court
14JV0057;
Petition Number 14JV005701;
A158639

360 P3d 531

Valerie Colas, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Schuman, Senior Judge.

EGAN, J.

**EGAN, J.**

In this dependency case, it is undisputed that mother is unfit. The juvenile court assumed jurisdiction based on allegations related to mother and an allegation that father failed to protect his two children, JMR and JMLR, from mother. Father later moved to dismiss jurisdiction, which the court continued after a hearing on father's motion. Father appeals, contending that the evidence is insufficient to show that the children's present conditions and circumstances endanger their welfare. ORS 419B.100(1)(c). We agree with father and reverse.

In reviewing the juvenile court's judgment, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient" to permit a particular outcome. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Mother and father, who were married, separated in 2013. Without initiating any formal domestic relations proceedings, father moved out of the family home in Nevada and left the children in mother's care. In September 2013, after father had moved out, father became concerned that mother was planning to move with the children to Oregon. Father testified that because of those concerns,

"I called the Sparks Police Department, told them that, and they—they said they could not do anything because there was not a motion in place, a court—court order.

"And it was too late for me to go down to the courthouse because it was closed, so I had the police go do a health and welfare check, and then the next morning I went to go check on my children, and her roommate had said that she had left."

In October 2013, mother filed a restraining order against father in Oregon, which father did not contest. The restraining order prohibited father from having parenting time.

In June 2014, following an investigation of mother, the Department of Human Services (DHS) entered into a protective plan with her that allowed the children to remain

with mother so long as she had someone to supervise her. Within days of agreeing to the plan, mother violated it by taking the children to Nevada, where she left the children with a friend; she also attempted to contact father, but was unable to do so. A few days later, DHS returned the children to Oregon and placed them in foster care. DHS did not contact father.

In September 2014, the juvenile court took jurisdiction over the children based on allegations related to mother and two allegations related to father, which he admitted—that he was the father of the children and that he had failed to protect the children from mother's "neglectful behavior."

In October 2014, mother was convicted in Oregon of unlawful possession of methamphetamine and placed under community supervision. As a condition of her supervision, mother was prohibited from leaving the county or the state without the written permission of her probation officer, a condition which mother would violate twice before the hearing on father's motion to dismiss jurisdiction. A few days after her conviction, mother signed a limited power of attorney pursuant to ORS 109.056(1)[1] that gave father the authority to make all parenting decisions for the children.

In November 2014, father filed a motion to dismiss dependency jurisdiction and terminate wardship and DHS objected. Mother was incarcerated at the time of the hearing, and the restraining order was no longer in effect. At the hearing, mother testified that she had no plans to move back to Nevada. She also testified that she wanted to give full custody of both children to father and that she preferred to have no physical contact with the children rather than participate in services. However, a DHS worker testified that a month before the hearing mother "indicated that if [the children] were back in Nevada, she could just go see them whenever she wanted to."

---

[1] ORS 109.056(1) provides, in part:

"[A] parent or guardian of a minor or incapacitated person, by a properly executed power of attorney, may delegate to another person, for a period not exceeding six months, any of the powers of the parent or guardian regarding care, custody or property of the minor child or ward, except the power to consent to marriage or adoption of a minor ward."

Father testified that, if jurisdiction were dismissed he would immediately "go back to the motel, pack our things, and go home [to Nevada]." He also testified that he planned to file for divorce and intended to seek sole custody of the children. When asked what he would do if mother attempted to see the children in Nevada, father testified that he would call the police and move with the children to another residence unknown to mother.

To support juvenile court jurisdiction, the court must find that there is a current threat of serious loss or injury to the child and a reasonable likelihood that the threat will be realized. *Dept. of Human Services v. S. P.*, 249 Or App 76, 84, 275 P3d 979 (2012); *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010). DHS has the burden to prove, by a preponderance of the evidence, that the facts on which jurisdiction is based persist to the degree that they pose a current threat of serious loss or injury that is reasonably likely to be realized. *Dept. of Human Services v. D. A. S.*, 261 Or App 538, 544, 323 P3d 484 (2014). The risk of harm must be nonspeculative and present at the time of the hearing. *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 403, 328 P3d 769 (2014). In deciding whether jurisdiction is warranted, the court must "consider all of the facts in the case before it and *** consider whether, under the totality of the circumstances, the child's welfare is endangered." *Id.* at 394.

Juvenile court jurisdiction is improper unless DHS proves that facts concerning each available parent expose the child to risk of serious loss or injury. *Id.* "[W]ithout evidence that one parent is unable to protect the child from the other parent, or that the child will suffer some risk of actual harm because one parent lacks sole legal custody, lack of a custody order alone is an insufficient basis for jurisdiction." *D. A. S.*, 261 Or App at 548 (citing *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172, 316 P3d 424 (2013)); *see also State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009) (stating the same principle).

As mentioned, father argues that evidence in the record is legally insufficient to support continued jurisdiction. DHS responds that the record is legally sufficient to

support the finding that father was unable to protect the children from mother.

According to DHS, the evidence in the record that supports such a finding consists of the facts that (1) because father does not have sole legal custody of the children, mother retains co-equal rights to the children despite the revocable power of attorney, (2) the juvenile court expressly discredited mother's testimony, including her statement that she would not attempt to visit the children, in light of the fact that mother had previously failed to abide by agreements that restricted her movements and that a DHS worker had testified that mother intended to visit the children, and (3) in the past, police declined to intervene on father's behalf without a court order when mother had physical custody of the children. We conclude that the facts are legally insufficient to support the juvenile court's finding that father was unable to protect the children at the time of the hearing.

The first fact identified by DHS—that father did not have sole legal custody—is of no value without support from the remaining facts because, although a fit parent may lack sole custody when the other parent is unfit, without evidence that the fit parent is unable to protect the children, the lack of custody order is insufficient to support jurisdiction. *D. A. S.*, 261 Or App at 548; *A. L. M.*, 232 Or App at 16; *R. L. F.*, 260 Or App at 172.

The remaining facts identified by DHS do not provide a basis for concluding that father is presently unable to protect the children. A DHS worker testified that mother intended to visit the children in Nevada and the trial court discredited mother's testimony, including her testimony that she would not attempt to visit the children in Nevada. Such evidence is evidence of mother's intent, it is not evidence of father's inability to protect the children from mother.

DHS also relies on the fact that police refused to intervene when mother moved to Oregon, alleging that that fact shows that, "if mother tried to remove the children from [father's] care * * * the police would tell him they would not interfere in a custody dispute without a court order." The fact that police declined to intervene on behalf of the parent who lacked physical custody of the children is not a basis

for concluding that father would be unable to protect the children. Going forward, the roles would be reversed. Father would be the parent with physical custody.

In sum, each piece of evidence identified by DHS fails to support the finding that father would be unable to protect the children from mother, and the evidence fairs no better when considered as a totality because father's lack of a custody order is an insufficient basis for jurisdiction without more, *D. A. S.*, 261 Or App at 548; *A. L. M.*, 232 Or App at 16; *R. L. F.*, 260 Or App at 172, and our reading of the record reveals no other possible basis for the court's finding that father would be unable to protect the children from mother. Without that finding related to father, the remaining allegations are insufficient to support continued jurisdiction. *W. A. C.*, 263 Or App at 394. Accordingly, we reverse.

Reversed.