Argued and submitted August 13, appeal of review judgments in Case Numbers 14JV0056 and 14JV0057 dismissed as moot, jurisdictional judgments in Case Numbers 14JV0103 and 14JV0104 affirmed November 4, 2015

In the Matter of J. M. L. A. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. R.,
*Appellant.*

Curry County Circuit Court
14JV0056;
Petition Number 14JV005601;
A158941 (Control)

In the Matter of J. M. R., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. R.,
*Appellant.*

Curry County Circuit Court
14JV0057;
Petition Number 14JV005701;
A158942

In the Matter of J. M. L. A. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. R.,
*Appellant.*

Curry County Circuit Court
14JV0103;
Petition Number 14JV010301;
A158986

In the Matter of J. M. R., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. R.,
*Appellant.*

Curry County Circuit Court
14JV0104;
Petition Number 14JV010401;
A158987

361 P3d 656

Shannon L. Flowers, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

In this consolidated appeal, father appeals juvenile court judgments concerning his two youngest children, JMR and JMLR.[1] First, father appeals review judgments in Case Numbers 14JV0056 and 14JV0057 denying his motion to dismiss jurisdiction based on his failure to protect the children from mother. Second, he appeals jurisdictional judgments in Case Numbers 14JV0103 and 14JV0104 asserting jurisdiction based on father's substance abuse.

Father initially filed a motion to dismiss jurisdiction in Case Numbers 14JV0056 and 14JV0057 in November 2014. That motion was denied, and father subsequently appealed the juvenile court's judgments denying father's motion to dismiss. We recently held that the juvenile court erred in denying that motion. *Dept. of Human Services v. J. R.*, 274 Or App 107, 360 P3d 531 (2015) (*J. R. I*). In January 2015, while father's appeal concerning his initial motion to dismiss was pending, but before we issued our decision in *J. R. I*, father moved again to dismiss jurisdiction in the juvenile court. The review judgments in Case Numbers 14JV0056 and 14JV0057 denying that subsequent motion to dismiss are the subject of two of father's appeals in this case. However, because we held in *J. R. I* that the juvenile court should have dismissed jurisdiction based on father's failure to protect, we dismiss the appeals of those review judgments as moot.

Consequently, we write only to address father's appeals of the jurisdictional judgments in Case Numbers 14JV0103 and 14JV0104, which requires us to consider whether father's substance abuse—the only remaining basis for jurisdiction as to father after our decision in *J. R. I*—provided a sufficient basis for the juvenile court to assert jurisdiction over the children.[2] Because we find that father's substance abuse posed a serious threat of loss or injury to

---

[1] Mother is not a party to this appeal.

[2] The juvenile court found that jurisdiction was proper as to father based on substance abuse allegations that were filed under new petitions. DHS filed new petitions, rather than amending the original petitions, because of the juvenile court's transition to Odyssey, the state's electronic court filing system. According to the juvenile court, this method is the only way for DHS to keep track of the petitions and fulfill its timelines. Thus, the new petitions triggered new case

the children at the time of the hearing, we affirm the juris-
dictional judgments.

The parties do not request *de novo* review, and we
decline to exercise our discretion to engage in such review
in this case. ORAP 5.40(8)(c) (stating that *de novo* review
is exercised only in "exceptional cases"). Thus, "we view the
evidence, as supplemented and buttressed by permissible
derivative inferences, in the light most favorable to the trial
court's disposition and assess whether, when so viewed, the
record was legally sufficient to permit that outcome." *Dept. of
Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444
(2013). We state the facts consistently with that standard.

We limit our discussion of the facts to those related
to father's substance abuse, except where necessary for con-
text.[3] Father has four children: JMLR is two years old and
JMR is six years old; A and S are older and not parties to this
appeal.[4] In June 2014, DHS opened an investigation regard-
ing allegations against mother, which resulted in JMR and
JMLR being placed in foster care. At the time, father lived in
Nevada and had not lived with the children since September
2013. In September 2014, the juvenile court asserted juris-
diction over JMR and JMLR based on father's "failure to
protect" the children from mother. In December 2014, DHS
filed new petitions alleging that father's "substance use
impair[ed] his judgment and ability to safely parent." The
substance abuse allegations were filed after DHS received
information from Norman Enlow, an investigator at Washoe
County Social Services in Nevada. Enlow had conducted an
Interstate Compact on the Placement of Children (ICPC)
home study on behalf of DHS to assess whether it was safe
to place the children in father's home. During Enlow's inves-
tigation, father admitted that he had been arrested for DUII
several times and had served time in prison as a result. He
also confirmed that, on August 28, 2014, he was involved in
a confrontation with his older son, A, that resulted in the

numbers in this case—14JV0103 and 14JV0104—even though the children were
already wards of the court in Case Numbers 14JV0056 and 14JV0057.

[3] For additional facts regarding the circumstances that resulted in DHS's
involvement, *see J.R. I*, 274 Or App at 109-10.

[4] A and S have a different mother.

police being called to his home. Father told Enlow that, on the day of that incident, he had consumed "a couple of shots of Jagermeister and several beers" because "he had a hard day and was stressed out." During that incident, JMR and JMLR were already in foster care in Oregon. Enlow concluded that father "needed to submit to a substance abuse assessment and follow any recommended treatment" before JMR and JMLR could be placed in his care. His conclusion was primarily based on the children's young age and the fact that father was "still drinking to excess, in spite of his history," as evidenced by father's confrontation with A in August 2014.

In February 2015, the juvenile court held a hearing to address the new substance abuse allegations and to hear arguments on father's motion to dismiss jurisdiction. The juvenile court heard testimony from Enlow, from DHS caseworker Crystle Miller, and from father. Enlow and Miller corroborated the facts described above. Miller stated her concern that father's continued alcohol abuse, even if moderate, would place the children at risk of neglect.

Father supplied more details about his alcohol use. He testified that he incurred four DUII convictions between 2002 and 2009 and that, as a result, he went to prison and participated in treatment for alcohol use four times. He admitted that he continues to drink, although he denied drinking to the point of intoxication. Father explained that he drinks "to ease [his] back so [he] can sleep" and asserted that his previous doctor recommended that he drink "[a] couple beers a night" despite her awareness that he is an alcoholic. Father testified that he stopped drinking and enrolled in substance abuse classes after DHS received Enlow's ICPC results. He explained, however, that he resumed drinking after only a week because he kept waking up at night with back pain and could not suffer through it. Father testified that he currently consumes alcohol every three or five days but that his consumption "varies so differently." When asked if his children would be at risk of harm because of his drinking, father stated:

"One or two beers to ease back pain, after my kids are already in bed and I'm just trying to go to sleep, does not

impair my ability to raise my kids, not to mention my girl-friend is with me 24 hours a day. * * * There's not any chance that my kids, my children would be harmed."

However, father was equivocal in identifying as a single parent, and he described his relationship with his girlfriend as follows: "At this time[,] we are trying to move in together, and we are starting a relationship, and that has been going on for the last six months." Father's girlfriend did not testify at the hearing.

The juvenile court found by a preponderance of the evidence that father's substance abuse, standing alone, was sufficient to support the assertion of jurisdiction over the children. In particular, the juvenile court found that father was not a credible witness and that he was an alcoholic who minimized his drinking problem. The court acknowledged that drinking a beer or two is not a problem for a typical person but found that it was a problem for father, given that he is an admitted alcoholic, served time in prison twice because of his drinking, and depended on beer to fall asleep. In addition, the court was not persuaded that father's girlfriend would take on the responsibility of caring for the children, given that they lived in separate homes and had only been dating for about six months at the time of the hearing. Ultimately, the court concluded, "If [father's] drunk * * * in bed, asleep, and his girlfriend's not there, there's nobody available."

Under ORS 419B.100(1)(c), jurisdiction is proper if a child's "condition or circumstances are such as to endanger the welfare" of the child. A child's welfare is endangered if there are "conditions or circumstances that present a current threat of serious loss or injury." *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013) (citing *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785, 292 P3d 616 (2012)). Under the totality of the circumstances, there must be "a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010) (internal quotation marks omitted). "DHS has the burden to establish a nexus between the allegedly risk-causing conduct * * * and risk of harm to the child." *Dept. of Human Services v. E. M.*, 264 Or App 76, 81, 331 P3d 1054 (2014). Moreover, the risk of harm

must be present at the time of the jurisdictional hearing and cannot be speculative. *Id.*

On appeal, father does not dispute his history of alcohol abuse or that he continues to consume alcohol. He does, however, assert that DHS failed to adduce evidence establishing a nexus between his alcohol use and a risk of harm to JMR and JMLR at the time of the hearing. Father argues that DHS did not present any affirmative evidence to establish that, at the time of the hearing, he was drinking to the point of intoxication. According to father, the last time he was intoxicated was during the August 2014 incident, which occurred about six months before the hearing. Additionally, father contends that DHS presented no evidence that he had ever harmed his children or that his drinking posed an actual, nonspeculative risk of future harm.

In response, DHS points to the following evidence to establish that father's alcohol use presented a risk of harm to the children: (1) father's four DUI convictions, (2) father's unsuccessful participation in multiple alcohol treatment programs, (3) father's continued alcohol consumption despite a history of alcoholism, and (4) father's failure to take current steps to address his substance abuse problem. According to DHS, the children's ages also made them particularly vulnerable to neglect because, at two and five years old, they were too young to take care of themselves if father was unavailable, and there was no other reliable parent in the home to care for them. Furthermore, DHS argues that the August 2014 incident was only resolved because a teenager in the home was able to call the police.

Ultimately, we agree with DHS that, under the totality of the circumstances, there was sufficient evidence in the record to support the juvenile court's finding that father's alcohol use posed a current risk of harm to JMR and JMLR.

First, it was permissible for the juvenile court to infer that father was likely drinking to the point of intoxication. *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 316 P3d 424 (2013), cited by father, does not assist him. In that case, DHS alleged that the father's marijuana and alcohol use interfered with his ability to parent his 23-month-old

child. *Id.* When DHS intervened, the father was using alcohol two or three times per week and marijuana a few times a week, and he had a history of methamphetamine addiction. *Id.* at 170. However, by the time of the jurisdictional hearing, the father was attending drug and alcohol treatment, and his urinalysis tests indicated that he was no longer drinking and that his THC levels were going down. *Id.* Although we acknowledged that the father's history of substance abuse could constitute a condition that exposed the child to a threat of harm, we held that DHS had failed to establish a *current* risk of harm because there was no evidence that the father was using alcohol at the time of the hearing and no evidence of how the father's past alcohol and marijuana use had affected his parenting. *Id.* at 172-73.

In this case, by contrast, father was not engaged in substance abuse treatment at the time of the jurisdictional hearing. After DHS asserted the substance abuse allegations, father attempted to begin treatment, but he quit after just one week. He also admitted that he drinks to self-medicate, and he was unable to clearly articulate how much alcohol he consumes or how often, contributing to an adverse credibility finding by the juvenile court. Those facts, combined with father's extensive history of alcoholism and drinking to excess (resulting in four DUII convictions, several failed attempts at treatment, and a recent incident with his older children), permitted the juvenile court to infer that father was likely drinking to the point of intoxication.

Second, it was permissible for the trial court to find that father's substance abuse subjected the children to a current, nonspeculative risk of harm. *State ex rel Dept. of Human Services v. D. T. C.*, 231 Or App 544, 219 P3d 610 (2009), provides a helpful contrast. There, DHS alleged that the father's substance abuse interfered with his ability to parent his children, ages eight, 11, and 12 years old. *Id.* The children had reported that their father "ha[d] been drinking heavily to the point where he passe[d] out on the couch on a regular basis * * * and [was] not able to parent them." *Id.* at 548 (internal quotation marks omitted). At the jurisdictional hearing, the father denied that he had an alcohol problem and testified that he had stopped drinking. *Id.* at 550. He also was attending AA meetings, albeit sporadically.

*Id.* at 551. The father's girlfriend of seven years, with whom he lived and had a child, also testified at the hearing and claimed that she did not drink or use drugs and that she supported the father's sobriety. *Id.* at 547, 551. The court found her to be credible. *Id.* at 551. In that case, we expressed serious concern about father's drinking, but noted that "[t]he key inquiry *** is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Id.* at 554 (internal quotation marks omitted). We concluded that there was not. *Id.* Specifically, we noted that the evidence presented did not demonstrate that the father was still drinking at the time of the hearing or that he was at risk of relapse. *Id.* at 554-55. Moreover, even if the father were to "pass[] out" because of his drinking, we concluded that the children were not at risk of harm because the father's girlfriend, a nondrinker, was reliably in the home to look out for their welfare. *Id.* at 554.

In this case, by contrast, there is no question about whether father was drinking alcohol at the time of the jurisdictional hearing; he was. Father's testimony was clear that he was unable to completely abstain from alcohol. Taking father's history of alcohol abuse into account, his continued use of alcohol to self-medicate presents a reasonable likelihood of harm to the children. Father admitted that he drinks to fall asleep, and given his history, the trial court could properly infer that he does so to the point of intoxication. Even if we assume that father only drinks once the children are asleep, they could still fall ill or otherwise need assistance that he would be unable to provide while intoxicated. What distinguishes this case from *D. T. C.* is that, here, it was not clear that father's girlfriend was in the home at all times or that she would be willing to assume his caretaking responsibilities. In *D. T. C.*, the father's girlfriend testified about her willingness to look after the children and was found to be credible. Here, father's girlfriend did not testify. Thus, it was reasonable for the juvenile court to anticipate a reasonable likelihood that the children could be endangered by father drinking himself to the point of intoxication without anyone else in the home to look after them.

Because there was sufficient evidence to establish that father's alcohol use presented a current risk of serious

loss or injury to JMR and JMLR, the juvenile court did not err in asserting jurisdiction based on father's substance abuse.

Thus, we dismiss as moot father's appeal of the review judgments in Case Numbers 14JV0056 and 14JV0057 and affirm the jurisdictional judgments in Case Numbers 14JV0103 and 14JV0104.

Appeal of review judgments in Case Numbers 14JV0056 and 14JV0057 dismissed as moot; jurisdictional judgments in Case Numbers 14JV0103 and 14JV0104 affirmed.