Argued and submitted October 6, affirmed December 29, 2010

In the Matter of T. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. T.,
*Appellant.*

Linn County Circuit Court
J070541;
Petition Number 07207J;
A144243

248 P3d 427

Margaret McWilliams argued the cause and filed the brief for appellant.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

ORTEGA, J.

## ORTEGA, J.

Mother appeals a permanency judgment in which the juvenile court approved a plan of adoption. The determination of a permanency plan must be supported by a preponderance of the evidence. *State ex rel Dept. of Human Services v. S. L.*, 211 Or App 362, 371, 155 P3d 73 (2007). Here, the court found that an open adoption would be the best outcome for child; the court further decided that, if an open adoption were not possible for any reason, another permanency hearing would be required. Mother has not requested *de novo* review. When we do not review *de novo*, the juvenile court's findings of historical fact are binding if supported by any evidence; its legal conclusions are reviewed for errors of law. ORS 19.415(3)(b); *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010). For the reasons set forth below, we affirm.

At the time of the permanency hearing, child was in foster care with nonrelatives. Child was five years old and had been in substitute care for one-third of his life. He was bonded to his mother, his father, and his foster parents. The Department of Human Services (DHS) argued for adoption as the permanency plan, and mother argued for guardianship. Mother made somewhat inconsistent statements about guardianship, stating that she would agree to a permanent guardianship but also stating that she hoped to regain custody of child one day.

Testimony and discussion about open adoption was included at the hearing. We understand the parties to agree that an open adoption is an adoption subject to an agreement allowing for continuing contact between a child and his birth relatives, as provided under ORS 109.305. *See also* OAR 413-120-0600 - 413-120-0635 (DHS rules regarding post-adoption communication agreements). Mother testified that, if child were adopted, she would want to participate in mediation to have continued contact with him. Child's DHS caseworker, Ray, testified that child's foster mother had expressed a desire for an open adoption. Child's foster mother made a statement to the court—which, although unsworn, was not contested by anyone—that she wanted to adopt child and would insist on an open adoption. In addition, Ray testified

that, although she could not guarantee an open adoption, she anticipated one; if child could not, for some reason, remain with his present foster family, DHS would recruit with the intention of finding an adoptive family who was open to continued contact between child and his birth relatives.

Both Dr. Giesick, a psychologist who evaluated child, and Monahan, child's therapist, agreed that child needs permanency immediately, but that he also needs to maintain a relationship with mother and would suffer emotional harm from losing contact with her. In Giesick's view, either an open adoption or a guardianship for the duration of child's childhood would be an appropriate plan for child. When asked how to weigh child's need for permanency and his need for continuing contact with mother, Giesick answered, "Permanency is paramount. I think permanency is the higher issue given that he's already had some developmental delays * * *." Monahan supported adoption and recommended mediation to allow for an ongoing relationship with mother if child were adopted; Monahan opposed guardianship as providing less permanency, based on her understanding that mother could someday contest a guardianship.

In the permanency judgment, the juvenile court stated that the foster mother was not legally obligated to enter into an open adoption and that DHS was not obligated to designate her as the adoptive placement or to seek an open adoption. The court found, however, that it appeared "very likely that the [foster parents] would adopt the child and that they would cooperate with an open adoption at least to permit the parents and grandparents to have contact." In a detailed discussion of the issues, the court explained:

"In reality, the court must consider balancing uncertainties. [The paternal aunt and uncle whom mother supported as guardians] **may** be able to provide for this child for the rest of his minority. The parents **may** or may not rehabilitate themselves to again get custody of the child. The foster parent **may** be the adoptive parent and **may** enter into an open adoption agreement. The court cannot create absolute certainty for the child, though that might be desirable. The risks to the child seem to be slightly greater with the guardianship option than they would be with the open adoption

option. Therefore, the court will take the rather extraordinary step of finding that adoption is the preferred plan only if it can be an open adoption. If the agency is successful in qualifying the [foster parents] as the adoptive placement and if the [foster parents] agree to an open adoption that is the best possible plan for this child, then the plan will remain adoption. It provides the certainty and stability of the most permanent placement which the statutes prescribe. It opens the child to the least risks, they being the lack of permanency or the lack of contact with family.

"If, however, the agency cannot designate the [foster parents] as the adoptive placement, the child will have to again move to another home. If that other adoptive placement will not agree to an open adoption, the child will lose contact with his family.

"The court cannot select the adoptive placement in this proceeding. The court cannot mandate an open adoption, nor can the agency. The court can and does find, however, that it is in the best interests of the child to be adopted in an open adoption permitting continued contact with his immediate family. The court also can and does find that if that open adoption is not possible for any reason, the permanency issue must come back before this court to reconsider whether placement with a relative in a guardianship may or may not be a better option than a closed adoption."

(Emphasis in original.) The court ordered that the concurrent plan of adoption be implemented and that the state file petitions to terminate parental rights.

Mother appeals. She contends that the juvenile court erred in two respects: (1) by approving a plan of adoption that was contingent on the adoption being "open" and (2) by changing the plan to adoption when a guardianship would better protect child's health and safety needs. Under ORS 419B.476, mother argues, "open adoption" is not an available permanency plan. Mother also contends that, because an open adoption is contingent on approval by a third party—namely, the as-yet-undetermined adoptive parents—a plan of adoption cannot ensure that child will have continuing contact with his birth parents, and thus the court cannot ensure that the plan is in child's best interests. Mother further argues that, because a permanency plan of

adoption cannot ensure continuing contact with her, a permanent guardianship, pursuant to ORS 419B.365, would better meet child's needs.

DHS responds that the juvenile court properly ordered a permanency plan of adoption. Although DHS agrees with mother that a juvenile court cannot order a permanency plan of open adoption, DHS takes the position that the court did not do so; in its view, any condition that the adoption be open should be treated as a recommendation.

We conclude, first, that the juvenile court did not order a plan of open adoption, which it explicitly stated it "cannot mandate"; rather, it ordered a plan of adoption.[1] Accordingly, mother's argument that the court approved a plan not contemplated by the permanency statute is not well taken. No one disputes that "adoption" is among the permanency plans identified in ORS 419B.476(5)(b). The Juvenile Code also provides for court review of DHS's development of placement plans, including adoption. At a permanency hearing, the court may review DHS's efforts to develop a concurrent plan, including, if adoption is the concurrent plan, "identification and selection of a suitable adoptive placement for the ward," ORS 419B.476(4)(e); may order DHS to develop or expand the case plan or concurrent permanent plan, ORS 419B.476(4)(f); and may order DHS "to modify the care, placement and supervision of the ward," ORS 419B.476(4)(g). *See also* ORS 419B.449(5) (the court shall consider efforts to develop a concurrent plan, including "identification of appropriate permanent placement options for the child or ward both inside and outside this state and, if adoption is the concurrent case plan, identification and selection of a suitable adoptive placement for the child or ward").

Although the juvenile court determined that the permanency plan should be "adoption," we reject DHS's contention that the juvenile court did no more than recommend an open adoption. Rather, the court found that an open adoption would best meet child's needs and decided that, if circumstances changed and an open adoption became impossible, a

_____

[1] We do not, therefore, reach the parties' arguments about whether a juvenile court has the authority to order an open adoption.

reexamination of the permanency plan would be required. Doing so was within the court's authority. Unless there is good cause not to hold a permanency hearing, a court's decision to conduct a permanency hearing, including a hearing on the court's own motion, is consistent with ORS 419B.470(5).[2] At a permanency hearing, a court makes findings based on a preponderance of the evidence before it; those findings may include a determination of the likelihood of an open adoption and whether an open adoption is in the child's best interests. The court also has authority to order another permanency hearing on its own motion; unless there is good cause not to hold a hearing, it may choose to do so where circumstances relating to the child's likely placement change.

We turn to mother's argument that the court should not have approved a plan of adoption, because the plan does not "ensure" or "guarantee[ ]" ongoing contact between child and mother and, therefore, another plan would better meet child's needs. Evidence in the record supports the juvenile court's finding that an open adoption would best meet child's needs for permanency and continuing contact with his birth family. In addition, evidence supports the court's finding that it was very likely that child's current foster parents would adopt child and would agree to continuing contact.[3] Any time a court approves a permanency plan, it necessarily makes predictions, based on a preponderance of the evidence before it, about the availability and capacity of potential caregivers —a birth parent, adoptive parent, guardian, or foster parent—to meet the child's needs. Finding that an open adoption is likely and will best meet a child's needs, as the court did

---

[2] ORS 419B.470(5) provides:

"Unless good cause otherwise is shown, the court shall also conduct a permanency hearing at any time upon the request of the department, an agency directly responsible for care or placement of the child or ward, parents whose parental rights have not been terminated, an attorney for the child or ward, a court appointed special advocate, a citizen review board, a tribal court or upon its own motion. The court shall schedule the hearing as soon as possible after receiving a request."

[3] We understand that, after the permanency hearing, the parties informed the court that the foster parents were no longer willing to be a placement for child. Mother has not appealed from any order regarding the permanency plan entered after the permanency judgment at issue here, and we do not review whether it would be error to order a permanency plan of adoption on a different record than the record at the permanency hearing.

here, is a predictive finding of a similar type. Based on its findings, the juvenile court did not err in changing the permanency plan to adoption.

Affirmed.