**Opinion issued December 18, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00564-CV

_____

## IN THE INTEREST OF N.J.H., A CHILD

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-03606J**

---

## CONCURRING OPINION

I join the Court's opinion and judgment. There was legally and factually sufficient evidence of endangering conduct and that termination of Father's parental rights was in N.J.H.'s best interest based on, among other things, Father's positive test for cocaine and history of family violence. In addition, Texas appellate courts have repeatedly relied on evidence of a parent's marijuana use to support

endangerment findings, so the Court's holding that is based, in part, on Father's marijuana use is well supported.[1] I write separately, however, to suggest that we should more closely tailor our consideration of marijuana use to what the termination statute actually requires.

The statute expressly authorizing involuntary termination of the parent-child relationship based on a parent's use of marijuana or other controlled substances, i.e., Section 161.001(b)(1)(P), requires clear and convincing evidence of use "in a manner that endangered the health or safety of the child[.]"[2] Our reliance on marijuana use—without accompanying evidence of impairment or some other circumstance that risks a child's health or safety—to show that a parent has engaged in a course of endangering conduct under Section 161.001(b)(1)(E) is a creature of judicial decision-making. It is not what the statute requires. And that decision-making fails to consider that there has been a sea change in society's acceptance of

---

[1]  *See, e.g.*, *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (considering father's admitted marijuana use as evidence of endangerment); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (considering evidence of father's marijuana use in affirming trial court's endangerment finding).

[2]  *See* TEX. FAM. CODE § 161.001(b)(1)(P) (permitting termination of parental rights if parent has "used a controlled substance," as defined in Health and Safety Code, "in manner that endangered the health or safety of the child" and failed to complete court-ordered treatment program or continued to abuse controlled substance after completing court-ordered treatment program); TEX. HEALTH & SAFETY CODE §§ 481.002(5) (defining controlled substance to include substances listed in Schedule I), 481.032 (listing marijuana in Schedule I hallucinogenic substances).

limited marijuana use. It may no longer be warranted to presume that marijuana use, by itself, indicates parental neglect or endangerment.

Of course, marijuana, like alcohol and like illicit drugs, can be abused and may impede a parent's ability to care for his or her child or place the child at risk of harm, but I believe our statutory framework requires something more than a single positive marijuana drug test or general statements about marijuana use before the courts reach that conclusion. Various geographic regions in our state and country, and the individuals elected to represent those voters' legislative inclinations, have increasingly concluded that marijuana *use* is not always synonymous with *abuse*. That older parental-termination cases dedicate little appellate-level analysis to this possibility counsels against overreliance on those cases.

## Marijuana Laws are Evolving

Marijuana is still illegal under federal law,[3] but there is a clear trend among the states toward greater acceptance of marijuana use. Medical use of marijuana by qualified patients is now permitted in the District of Columbia and more than 30

---

[3]    21 U.S.C. § 812 (listed under Schedule I (c) Hallucinogenic Substances (10) "Marihuana").

states[4] and territories.[5] Recreational use of marijuana is legal in the District of Columbia and 10 states (Alaska, California, Colorado, Maine, Massachusetts, Michigan, Nevada, Oregon, Vermont, and Washington).[6] A significant number of

---

[4]   *See* ALASKA STAT. §§ 17.37.10 to .80; ARIZ. REV. STAT. §§ 36–2801 to –2819; ARK. CONST. amend. 98, §§ 1–25; CAL. HEALTH & SAFETY CODE §§ 11362.7–.9; COLO. REV. STAT. § 18–18–406.3; CONN. GEN. STAT. §§ 21a–408 to –414; DEL. CODE tit. 16, §§ 4901a–4928a; D.C. Code §§ 7–167.01 to .13; FLA. STAT. § 381.986; GA. CODE §§ 43–34–120 to –126; HAW. REV. STAT. §§ 329–121 to –131; 410 ILL. COMP. STAT. 130/1 to /999; ME. REV. STAT. tit. 22, §§ 2421 to 2430–B; MD. CODE, HEALTH–GEN. §§ 13–3301 to –3316; MASS. GEN. LAWS ch, 94D, §§ 1–3; MICH. COMP. LAWS §§ 333.26421–.26430; MINN. STAT. §§ 152.21–.37; MONT. CODE §§ 50–46–301 to –345; NEV. REV. STAT. §§ 453A.010–.810; N.H. REV. STAT. §§ 126–X:1 to :12; N.J. STAT. §§ 24:6I–1 to –16; N.M. STAT. §§ 26–2B–1to –7; N.Y. PUB. HEALTH LAW §§ 3360 to 3369–e; N.D. CENT. CODE §§ 19–24.1–01 to –40; OHIO REV. CODE §§ 3796.01–.30; OR. REV. STAT. §§ 475b.785–.949; 35 PA. CONS. STAT. §§ 10231.101–.2110; 21 R.I. GEN. LAWS §§ 21–28.6–1 to –17; VT. STAT. tit. 18, §§ 4471–4474m; WASH. REV. CODE §§ 69.51A.005–.903; W. VA. CODE §§ 16A–1–1 to –16–1.

[5]   *See* 10 GUAM CODE ANN. §§ 122501–122529; 9000 PR REGLA 8686.

[6]   *See* ALASKA STAT. §§ 17.38.010, .020 (regulating personal use of marijuana, including possession, use, and purchase of one ounce or less of marijuana); CAL. HEALTH & SAFETY CODE §§ 11357, 11362.1; CAL. PENAL CODE § 17 (authorizing personal use of up to 1 ounce of marijuana); COLO. REV. STAT. §§ 16, 18-18-406, 18-1.3-501, 18-1.3-401.5 (authorizing personal use of up to 1 ounce of marijuana and making possession of up to two ounces of marijuana petty offense punishable by a fine up to $100); D.C. CODE § 48–904.01(a) (implementing ballot initiate that legalized, for persons over 21 years of age, possession, use, purchase, or transport of up to two ounces of marijuana); ME. REV. STAT. tit. 28-B, § 1501; *id.* tit. 17-a, §§ 1107-A, 1252 (amount over 2 and a half ounces legal threshold is grouped into 4 classes punishable up to 10 years in confinement); MASS. GEN. LAWS ch. 94G, § 7 (authorizing personal use of up to 1 ounce of marijuana for persons 21 years of age or older); NEV. REV. STAT. § 453D.110(1) (authorizing personal use of up to 1 ounce of marijuana for persons 21 years of age or older); OR. REV. STAT. § 475B.337(1)(b) (authorizing personal use of up to 1 ounce of marijuana for persons over the age of 21); VT. STAT. tit. 1, § 4230 (authorizing personal use of up to 1 ounce of marijuana); WASH. REV. CODE § 69.50.4013(3)(a)–(b) (providing that it is not violation of controlled substance act for person 21 years of age or older to

states now treat possession of a small amount of marijuana for personal consumption as a misdemeanor offense or have decriminalized it altogether, electing instead to impose a civil penalty (though leniency in some of these states is extended only for first- or second-time possession).[7] I can only surmise that the trend toward legalization and society's increasingly tolerant view of marijuana use result, at least in part, from recognition that almost "5 million people reported using marijuana on a daily or almost daily period basis over a year, and almost half of the population has tried marijuana."[8]

---

possess marijuana in amount not exceeding statutory threshold); *see also* Jeff Karoub, *Michigan voters bring legal recreational marijuana to the Midwest*, Chicago Tribune (Nov. 7, 2018, 7:25 AM), https://www.chicagotribune.com/news/nationworld/politics/ct-michigan-voters-legalize-recreational-pot-20181106-story.html.

[7] *See, e.g.*, CONN. GEN. STAT. §21a–279 to –279a (civil offense); DEL. CODE tit. 16, § 4764(c) (civil offense); 720 ILL. COMP. STAT 550/4 (civil offense); MD. CODE § 5-601.1 (civil offense); MISS. CODE § 41-29-139(c)(2) (civil offense); NEB. REV. STAT. § 28-416 (civil offense); N.H. CRIM. CODE 318B:2–c (civil offense); N.Y. PEN. LAW §§ 221.05, 221.10 (civil offense); R.I. GEN. LAWS § 21–28–4.01 (civil offense); *see also* MINN. STAT. § 152.027(4) (misdemeanor offense punishable by fine for first- and second-time offenders); MO. REV. STAT. § 579.015 (misdemeanor offense punishable by fine for first-time offenders); N.C. GEN. STAT. §90–95(d)(4) (misdemeanor offense punishable by fine for first-time offenders); OHIO REV. CODE § 2925.11(C)(3) (misdemeanor offense punishable by fine for first- and second-time offenders).

[8] Alice Kwak, *Medical Marijuana and Child Custody: The Need to Protect Patients and Their Families from Discrimination*, 28 HASTINGS WOMEN'S L.J. 119, 124 (2017) (citing *Answers to Frequently Asked Questions About Marijuana*, Office of National Drug Control Policy, https://www.whitehouse.gov/ondcp/frequently-asked-questions-and-facts-about-marijuana (last visited Feb. 5, 2016) (answer to question "What are the trends in marijuana use in the United States?"), and *In Debate Over Legalizing Marijuana, Disagreement Over Drug's Dangers, In Their*

In Texas, this trend has not yet taken hold to the same extent as in other states. Possession of marijuana—even of small amounts of less than two ounces—remains a criminal offense punishable by jail time.[9] But there are hints of change here too. In 2015, our legislature adopted the Compassionate Use Act, which allows for medical use of low-THC cannabis by Texans who suffer from intractable epilepsy and have a prescription from qualified physicians.[10] At least three of this State's larger cities—Houston,[11] Dallas,[12] and Austin[13]—have adopted misdemeanor diversion programs that do not decriminalize possession but encourage law enforcement officers to cite

---

*Own Words: Supporters and Opponents of Legalization*, Pew Research Center (Apr. 14, 2015), http://www.people-press.org/2015/04/14/in-debate-over-legalizing-marijuana-disagreement-over-drugs-dangers/#survey-report ("49% say they have ever tried marijuana")).

[9]    TEX. HEALTH & SAFETY CODE § 481.032.

[10]    *See id.* §§ 487.001–.201 (Texas Compassionate Use Act authorizing the cultivation, processing, and dispensing of low-THC cannabis to prescribed patients with intractable epilepsy); *see also* TEX. OCC. CODE § 169.001(3) (defining "Low-THC cannabis" as containing "(A) not more than 0.5 percent by weight of tetrahydrocannabinols; and (B) not less than 10 percent by weight of cannabidiol").

[11]    Misdemeanor Marijuana Diversion Program, Harris County District Attorney Kim K. Ogg, https://app.dao.hctex.net/MMDP (effective date Mar. 1, 2017, last viewed Nov. 6, 2018).

[12]    Stephen Young, Cite-and-Release Starts Today in Dallas, DALLAS OBSERVER (Dec. 1, 2017, 4:00 AM), https://www.dallasobserver.com/news/dallas-starts-cite-and-release-for-weed-possession-10124408.

[13]    Katie Hall, *Austin gives police more 'cite-and-release' discretion*, STATESMAN (Oct. 29, 2018, 2:12 PM), https://www.statesman.com/news/20181028/austin-gives-police-more-cite-and-release-discretion.

and release people in possession of small amounts of marijuana, rather than arrest them. Governor Greg Abbott recently indicated his willingness to consider legislation reducing possession of up to two ounces of marijuana from a Class B to a Class C misdemeanor offense.[14] In addition, the 2018 platforms of Texas's two major political parties include marijuana reform.[15] And according to one recent poll, more than half of Texas's registered voters believe marijuana should be legalized.[16]

---

[14] Sunny Sone, *Texas Governor Greg Abbott Opens His Mind to Marijuana Decriminalization . . . Kinda*, TEXAS OBSERVER (Oct. 2, 2018, 9:37 AM), https://www.texasobserver.org/texas-governor-greg-abbott-opens-his-mind-to-marijuana-decriminalization-kinda/. "Rather than the current punishment of up to 180 days in jail and a $2,000 fine, petty [marijuana] possession would be a non-jailable offense more like a traffic violation, carrying only a fine of up to $500." *Id.*; *see* TEX. PENAL CODE §§ 12.22 (punishment for Class B misdemeanors), 12.23 (punishment for Class C misdemeanors).

[15] *See 2018 Republican Party of Texas Platform*, REPUBLICAN PARTY OF TEXAS, https://www.texasgop.org/platform/ (last visited Nov. 6, 2018) (stating, in Item 107, that Republican Party supports "a change in the law to make it a civil, and not a criminal, offense for legal adults only to possess one ounce or less of marijuana for personal use, punishable by a fine of up to $100, but without jail time"); *Texas Democratic Party 2018–2020 Platform*, TEXAS DEMOCRATIC PARTY, https://www.txdemocrats.org/our-party/texas-democratic-party-platform/ (last visited Nov. 6, 2018) (stating that Democratic Party supports state legislation "to legalize possession and use of cannabis and its derivatives" and federal legislation "to remove cannabis as a Schedule 1 Controlled Substance and to remove all criminal penalties for use and possession of cannabis).

[16] Ross Ramsey, *Led by Democrats and young adults, most Texas voters want to legalize marijuana, UT/TT Poll finds*, THE TEXAS TRIBUNE (June 27, 2018, 12:00 AM), https://www.texastribune.org/2018/06/27/marijuana-democrats-young-adults-texas-poll/ (53% of registered voters would legalize marijuana either in small amounts (30%) or any amount (23%), and another 31% would legalize marijuana only for medicinal purposes). Of course, there are also individuals opposed to legalizing marijuana for any purpose. *See id.* (same poll showed that

## Our Consideration of Marijuana Use in Termination Cases
## Should More Closely Track What the Statute Requires

On occasion, including in opinions I have authored, this Court has explained that a parent's illegal drug use may support termination based on endangerment because "it exposes the child to the possibility that the parent may be impaired or imprisoned."[17] As marijuana laws evolve, we should reconsider this language and its underlying reasoning as it concerns a parent's recreational marijuana use as evidence of endangerment in termination cases. Such broad language suggesting that all drug use is equivalent may no longer be supportable.

If it is not true that *all* marijuana use is endangering, then courts should, under Section 161.001(b)(1)(E)'s endangerment predicate, examine whether the use endangered or created a risk of physical or emotional harm to the child under the facts of the case. After all, the statute does not list drug use itself as a ground for termination; termination is authorized only when the drug is used in an endangering manner.[18] There was no evidence in this case, nor in many of the other termination

---

16% of registered voters believe possession of marijuana should remain illegal under any circumstances).

[17] *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re M.M.*, No. 01-16-00998-CV, 2017 WL 2645435, at *10 (Tex. App.—Houston [1st Dist.] June 16, 2017, no pet.) (mem. op.); *In re T.E.G.*, No. 01-14-00051-CV, 2014 WL 1878919, at * 7 (Tex. App.—Houston [1st Dist.] May 8, 2014, no pet.) (mem. op.).

[18] *See* TEX. FAM. CODE § 161.001(b)(1)(E), (P).

appeals before our Court, regarding the physical effects of recreational marijuana use or whether the use or any pattern of use actually endangered the child.

A parent's "interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one."[19] To terminate parental rights or deprive a parent of access to his or her child based on endangerment absent evidence that marijuana use has actually caused or is causing a risk of harm does not satisfy the strict standards that apply in these cases.[20]

I do not attempt to propose a bright-line test for what evidence is required or when marijuana use may be sufficiently endangering so as to adversely impact an individual's ability to parent a child. It may be that the courts should consider a parent's recreational marijuana use only when specific facts show endangerment or

---

[19] *In re M.S.*, 115 S.W.3d at 547 (quoting *Lassiter v. Dep't of Soc. Servs. of Durham County, N. C.*, 452 U.S. 18, 27 (1981)).

[20] Opinions from states that already have wrestled with medical or recreational use of marijuana in child welfare proceedings are instructive on this issue. *See, e.g.*, *T.G. v. Dep't of Children & Families*, 927 So. 2d 104 (Fla. Dist. Ct. App. 1st Dist. 2006) (father's lone positive drug test was not competent substantial evidence to support dependency finding when there was no evidence that father was addicted to cocaine or marijuana or that children were harmed as result of past drug use); *Dep't of Human Servs. v. C.Z.*, 236 P.3d 791 (Or. 2010) (reversing adjudication for lack of evidence showing that mother's marijuana use was condition or circumstance that posed risk to her children); *New Jersey Div. of Youth & Family Servs. v. V.T.*, 32 A.3d 578, 585 (N.J. App. Div. 2011) (stating that "it is important to make clear that not all instances of drug ingestion by a parent will serve to substantiate a finding of abuse or neglect"); *In re L.P.*, 6 N.E.3d 1019 (Ind. Ct. App. 2014) (mother's single use of methamphetamine outside child's presence did not support trial court's "Child in Need of Services" determination).

when a parent is unable to provide regular care because of a substance-abuse problem, as shown by evidence that the parent has been diagnosed by a medical or mental health professional as having a current substance-abuse problem or satisfies the definition of substance abuse in the Diagnostic and Statistical Manual of Mental Disorders ("DSM").[21] A parent's occasional use of marijuana recreationally also may, under some circumstances, be evidence of his or her inability to provide proper care for a child of tender age.[22] Any meaningful "endangering" analysis would have to take into account where the use occurred, the level of the use, and, significantly, whether the child was in the parent's care at the time.

---

[21] *See In re Drake M.*, 211 Cal. App. 4th 754, 766 (2012) (holding that parent engages in "substance abuse" only if (1) medical professional has diagnosed parent as having current substance abuse problem or (2) parent's substance abuse meets DSM definition of substance-abuse problem); *but see In re Ryan G.*, No. B284624, 2018 WL 2056003, at *4 (Cal. App. 2d May 3, 2018) (not designated for publication) (declining to require *Drake M.* showings in all cases and noting that more recent version of DSM defines "substance abuse" to include drug use resulting in interpersonal problems (such as physical fights) or failure to fulfill major role obligations (such as neglect of household)); *see also In re Natalie A.*, 243 Cal. App. 4th 178, 185 (2015); *In re Rebecca C.*, 228 Cal. App. 4th 720, 726 (2014); *In re Christopher R.*, 225 Cal. App. 4th 1210, 1218 (2014).

[22] *See In re Rebecca C.*, 228 Cal. App. 4th at 726 (2014) (concluding that even though mother was abusing drugs, it was not impacting her 13-year-old child); *In re Drake M.*, 211 Cal. App. 4th at 767 (observing that, in case involving toddler who required regular care and attention due to tender age, child protective services agency needed only to produce sufficient evident that father was substance abuser to justify finding that child should enter state custody).

In addition, courts may consider marijuana use for a different prong of the termination statute: failure to comply with the provisions of a court order.[23] The family services plans approved and ordered by the trial courts frequently require a parent to abstain from drug use as a condition of visitation or reunification. Factfinders could conclude that parental rights should be terminated in cases where a parent does not abstain from marijuana long enough to satisfy the plan despite having knowledge that a failure to comply could support termination. But evidence of marijuana use for this ground would not include marijuana use before the plan was adopted. Evidence of marijuana use to prove endangerment, on the other hand, includes conduct before the termination proceedings commenced.[24]

Following the statute as written requires that parental drug use actually endanger the child. The trial courts are in the best position to determine the degree to which a child is endangered based on an assessment of the facts and the actual parenting of the child. On appeal, we should engage in a fact-specific analysis of the

---

[23]     *See* TEX. FAM. CODE § 161.001(b)(1)(O) (permitting termination of parental rights if parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child").

[24]     *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (explaining that courts may consider parent's actions occurring before child's birth as part of endangerment analysis).

evidence of endangerment in each termination proceeding rather than rest on general characterizations.

With these concerns in mind, I respectfully concur.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

Brown, J., concurring.